# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 16, 2011　　　Decided November 4, 2011

No. 10-7140

UNITED STATES OF AMERICA, EX REL. SHELDON BATISTE,
APPELLANT

v.

SLM CORPORATION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00425)

*Catherine Y. Hancock*, Attorney, U.S. Department of Justice, argued the cause as *amicus curiae* United States of America in support of appellant. With her on the brief were *Tony West*, Assistant Attorney General, *Ronald C. Machen*, *Jr*., United States Attorney, and *Thomas M. Bondy*, Attorney.

*Timothy J. Matusheski* argued the cause for appellant. With him on the briefs was *Tracy D. Rezvani*.

*Lisa S. Blatt* argued the cause for appellee. With her on the brief was *R. Reeves Anderson*.

Before: SENTELLE, *Chief Judge*, ROGERS and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: Relator Sheldon Batiste, on behalf of the United States, appeals the district court's dismissal of his *qui tam* complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The district court held that an earlier-filed complaint barred its consideration of Batiste's complaint under the first-to-file rule of the federal False Claims Act ("FCA"), 31 U.S.C. § 3730(b)(5). The case raises a question of first impression in this Circuit—whether Section 3730(b)(5) requires the first-filed complaint to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b) for alleging fraud in order to bar a later-filed complaint.

We affirm the district court. We hold that the earlier-filed complaint alleges the same material elements of a fraudulent scheme as Batiste's complaint, and that the earlier-filed complaint need not meet the heightened pleading standards of Rule 9(b) to allege facts sufficient to prompt a government investigation, and, thus, to bar later-filed complaints under FCA Section 3730(b)(5). Finally, we hold that Batiste waived his argument that the case should not have been dismissed with prejudice.

## I. Background

### A. Batiste Complaint

On June 13, 2008, Sheldon Batiste filed a complaint on behalf of the United States government against SLM

Corporation ("SLM," commonly called "Sallie Mae") under the *qui tam* provisions of the FCA, 31 U.S.C. §§ 3729-3732. Batiste First Amended Complaint ("Batiste Complaint") ¶ 1. The FCA allows a private person (a "relator") to bring an action in the Government's name, 31 U.S.C. § 3730(b), and to recover a portion of the proceeds of the action, *id*. § 3730(d), subject to the requirements of the statute.

According to the allegations in his complaint, from September 27, 2004, until April 28, 2006, Batiste worked as a senior loan associate at SLM Financial Corporation, a subsidiary of SLM, in Mount Laurel, New Jersey. Batiste Complaint ¶ 18.

He alleges he has personal knowledge that SLM defrauded the U.S. government through its administration of student loans under the Federal Family Education Loan Program ("FFELP"). *Id*. ¶¶ 5-6. Batiste alleges that from October 5, 2004, to the time of filing, SLM defrauded the government by presenting claims for funds to the government, each of which included false certifications that the data SLM submitted with the claims were correct and conformed to federal law. *Id.* ¶¶ 9, 16, 26, 27, 33, 35.

He further alleges that SLM accomplished this fraud by unlawfully putting student loans into forbearance—that is, allowing borrowers to cease payments temporarily, make payments over an extended period of time, or make smaller payments than previously scheduled—in violation of the Higher Education Act's (Pub. L. No. 89-329, codified at 20 U.S.C. § 1001 *et seq*.) forbearance regulations (codified at 34 C.F.R. § 682.211). *Id*. ¶¶ 14-16. Batiste posits SLM did this because interest continues to accrue and the Department of Education continues to pay special allowances to SLM while loans are in forbearance, thereby increasing SLM's return on each loan. He further alleges that the longer a loan stayed in forbearance, the

longer SLM would postpone default, thereby artificially keeping SLM's default ratio low and helping SLM maintain its status as an eligible lender under Department of Education guidelines. *Id*. ¶ 17.

Batiste alleges that SLM regularly granted forbearances to borrowers who paid SLM to bring their accounts current, in violation of regulations that mandate SLM only put loans into forbearance when borrowers intend, but cannot afford, to pay their loans. *Id*. Batiste alleges SLM systematically encouraged employees to grant forbearances unlawfully. Managers told loan officers to "forget" their formal training and to grant forbearances to "anyone who is delinquent regardless of excuse or whether the borrower had any intention of ever repaying the loan." *Id*. ¶¶ 19-21. Batiste further alleges that SLM incentivized loan officers to grant unlawful forbearances by giving bonuses to individuals who reduced delinquencies by a certain amount, whether by bringing borrowers current on their loans or granting them forbearances. *Id*. ¶ 22-24.

## B. Zahara Complaint

On November 9, 2005, over two years before Batiste filed his complaint, Michael Zahara filed a *qui tam* case against, *inter alia*, SLM and his employer, Student Assistance Corporation ("SAC"), a wholly-owned SLM subsidiary. Complaint, *United States ex rel. Zahara v. SLM Corp.*, No. 2:05-cv-8020 (C.D. Cal. Nov. 9, 2005) (later transferred to the Southern District of Indiana) ("Zahara Complaint"). From November 29, 2004, until August 16, 2005, Zahara worked as a Default Prevention Specialist for SAC, a division of SLM's Debt Management Operations department, in Las Vegas, Nevada. Zahara Complaint ¶¶ 18, 31, 162.

Zahara alleged that throughout his employment, SLM "knowingly allowed their employees and agents to falsify loan records pertaining to delinquent FFELP loans held by Sallie Mae." *Id*. ¶ 3. Specifically, he focused his complaint on employees falsifying forbearance records, alleging that SLM employees would represent that borrowers orally agreed to forbearances when, in fact, the SAC employees had never actually spoken with the borrowers. *Id*. ¶¶ 3-4. He alleged that SLM and SAC encouraged such fabrications by imposing a delinquency quota system and a bonus system under which employees would receive bonuses based on team performance in bringing loans current. *Id*. ¶¶ 24-27. Zahara alleged SLM did this to increase its revenue, meet its performance goals, and maintain its "Exceptional Performer" designation, *id*. ¶ 30, a now-repealed status that allowed SLM to receive higher-guarantee payments than other lenders on its defaulted loans under the Higher Education Act. *See* 20 U.S.C. § 1078-79 (repealed 2007).

Zahara also alleged SLM defrauded the government through other practices, including failing to conduct minimal due diligence on federal loans it originated, Zahara Complaint ¶¶ 144-146; improperly consolidating loans, *id*. ¶¶ 147-152; failing to bill borrowers in a timely manner, *id*. ¶¶ 153-154; improperly crediting borrowers' payments, *id*. ¶¶ 155-156; and concealing defaulted loans, *id*. ¶¶ 157-159.

The Southern District of Indiana dismissed Zahara's complaint without prejudice after he was unable to obtain counsel by a set deadline. Entry Dismissing Action at 1, *United States ex rel. Zahara v. SLM Corp.*, No. 1:06-cv-088 (S.D. Ind. Mar. 12, 2009), ECF No. 42.

6

## C. Procedural History

The district court dismissed Batiste's complaint with prejudice on September 24, 2010, for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *United States ex rel. Batiste v. SLM Corp.*, 740 F. Supp. 2d 98, 101-02 (D.D.C. 2010). The court held that under the FCA's first-to-file rule, the Zahara Complaint barred the court's consideration of the Batiste Complaint. The first-to-file rule provides, "When a person brings an action under [the *qui tam*] subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). The district court found that the Batiste Complaint alleged the "same material elements" of fraud as the Zahara Complaint, and thus was barred by the earlier-filed complaint. *Batiste*, 740 F. Supp. 2d. at 102. The district court rejected Batiste's argument that the Zahara case was not a "pending action" for first-to-file purposes because the Zahara Complaint did not meet heightened pleading standards for fraud allegations under Federal Rule of Civil Procedure 9(b). *Id*. at 104. This appeal followed.

## II. Analysis

Batiste raises three arguments on appeal: (A) the district court improperly dismissed the Batiste Complaint under the FCA's first-to-file bar because the Batiste Complaint and Zahara Complaint allege different fraudulent schemes; (B) the district court improperly concluded that the FCA's first-to-file bar does not require a first-filed complaint to meet the pleading standards for fraud; and (C) the district court improperly dismissed Batiste's complaint with prejudice.

We agree with the district court that the complaints allege the same material elements of the same fraud and that the FCA's first-to-file bar does not require a first-filed complaint to meet heightened pleading standards, and we determine Batiste waived his argument regarding the district court's dismissal with prejudice.

## A.  Same Material Elements of Fraud

Appellate courts review *de novo* the dismissal of a complaint for lack of jurisdiction.  *United States ex rel. Findley v. FPC-Boron Emps.' Club*, 105 F.3d 675, 681 (D.C. Cir. 1997). Applying that standard in this case, we reason as follows:

The FCA's first-to-file rule provides that "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  31 U.S.C. § 3730(b)(5). This furthers the statute's "twin goals of rejecting suits which the government is capable of pursuing itself, while promoting those which the government is not equipped to bring on its own." *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217 (D.C. Cir. 2003) (quoting *United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 651 (D.C. Cir. 1994)).  Therefore, the rule "bar[s] 'actions alleging the same material elements of fraud' as an earlier suit, even if the allegations 'incorporate somewhat different details.'" *Id.* (quoting *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001)).  Under this standard, two complaints need not allege identical facts for the first-filed complaint to bar the later-filed complaint.  *Id*. at 218.

As a preliminary matter, Batiste urges this Court to interpret the statute to mean a later-filed complaint must be both "a related action" to and "based on the facts" underlying the first-filed

complaint. He argues the district court incorrectly read the statute disjunctively to mean a later-filed complaint may be either a related action or based on the same facts. The plain language of the statute, however, is neither conjunctive nor disjunctive. It is clear that "based on the facts underlying the pending action" merely clarifies "related action." *See United States ex rel. Chovanec v. Apria Healthcare Group, Inc.*, 606 F.3d 361, 363-65 (7th Cir. 2010). The district court did not misinterpret this straightforward language. Moreover, Batiste fails to explain how his complaint is unrelated to the Zahara Complaint. He relies on the argument that his complaint is not based on the facts underlying the Zahara Complaint, a contention we find unavailing, as discussed below.

Reviewing the Zahara and Batiste complaints *de novo*, we must consider whether they allege the "same material elements of fraud." In other words, we must determine whether the Batiste Complaint alleges a fraudulent scheme the government already would be equipped to investigate based on the Zahara Complaint. A side-by-side comparison has persuaded us that, although the complaints allege somewhat different facts, Zahara's complaint suffices to put the U.S. government on notice of allegedly fraudulent forbearance practices at SLM and its subsidiaries, and Batiste's complaint alleges the same material elements of the same fraud.

Both Zahara and Batiste name the parent company, SLM, as the lead defendant. Zahara discusses activities at an SLM subsidiary office in Nevada, but alleges a nationwide scheme attributable not only to the subsidiary, but also to SLM. Zahara Complaint ¶¶ 32, 35, 36. Batiste focuses on activities at an SLM office in New Jersey where he worked, but he also alleges a nationwide scheme. *See* Batiste Complaint ¶¶ 18-25 (discussion of SLM practices in Batiste's office); *id.* ¶¶ 2 (alleging that "policies and procedures yielding the violations complained of

herein" originated at Sallie Mae headquarters in the District of Columbia).

Both Zahara and Batiste allege the fraud began in late 2004. Zahara Complaint ¶¶ 18, 31; Batiste Complaint ¶ 16. Zahara alleges the fraud ended at his subsidiary in June 2005. Zahara Complaint ¶ 29. Batiste alleges the fraud was still continuing at his subsidiary at the time of the complaint. Batiste Complaint ¶ 16. Putting aside how Batiste might know the fraud continued through the date he filed his complaint, given that he had not worked at SLM for two years at that point, these temporal differences are immaterial, especially since both complaints allege almost exactly the same starting date. *See United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 (5th Cir. 2009) ("[A] relator cannot avoid § 3730(b)(5)'s first-to-file bar by simply adding factual details or geographic locations to the essential or material elements of a fraud claim against the same defendant described in a prior complaint."). If the government investigated the facts alleged in Zahara's complaint on a nationwide basis, it would discover continuing fraud in the New Jersey offices, as well as the completed fraud in the Nevada offices, if such fraud existed.

Finally, Zahara and Batiste broadly allege that the same fraudulent activities occurred at each of their offices, for the same reasons, and that similar SLM corporate policies promoted the fraudulent behavior. They both allege SLM fraudulently increased its profits and promoted its standing with the Department of Education by falsifying forbearances. Zahara Complaint ¶ 30; Batiste Complaint ¶ 17. And both allege that SLM's corporate culture promoted increasing the dispensation of forbearances through quotas and a team bonus system. Zahara Complaint ¶¶ 24-27; Batiste Complaint ¶¶ 22-25. Though Zahara focused on the fabrication of oral forbearance requests, Zahara Complaint ¶¶ 3-8, 30, and Batiste focused on the offering of

forbearances to unqualified borrowers, Batiste Complaint ¶¶ 17-21, the allegations of the first complaint give the government grounds to investigate all that is in the second.

Under the *Hampton* material facts test, these complaints allege essentially the same corporation-wide scheme. The Zahara Complaint would suffice to equip the government to investigate SLM's allegedly fraudulent forbearance practices nationwide. Batiste's additional details would not give rise to a different investigation or recovery. *See United States ex rel. Ortega v. Columbia Healthcare*, 240 F. Supp. 2d 8, 13 (D.D.C. 2003) ("[A]n examination of possible recovery . . . aids in the determination of whether the later-filed complaint alleges a different type of wrongdoing on new and different material facts."). The district court properly dismissed Batiste's complaint under the FCA's first-to-file bar.

## B.  Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Batiste raises a question of first impression in this Court—namely, whether a complaint must allege fraud with particularity sufficient to meet that heightened pleading standard in order to bar later-filed complaints under the FCA's first-to-file rule. We hold that first-filed complaints need not meet the heightened standard of Rule 9(b) to bar later complaints; they must provide only sufficient notice for the government to initiate an investigation into the allegedly fraudulent practices, should it choose to do so.

Batiste, supported by the United States as *amicus curiae*, argues that the court should impose a heightened pleading requirement on complaints for first-to-file purposes, relying on *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir.

2005). Such an interpretation, they argue, would strike the appropriate balance between the first-to-file rule's twin purposes—to encourage whistleblowers to come forward with allegations of fraud and to prevent copycat actions that do not provide additional material information to the government. Requiring a complaint to meet the Rule 9(b) standards, they contend, would ensure the complaint provides the government sufficient information to pursue an investigation, as well as prevent an overly-broad complaint from barring a more detailed, later-filed complaint.

We are unconvinced. Nothing in the language of Section 3730(b)(5) incorporates the particularity requirement of Rule 9(b), which militates against reading such a requirement into the statute. The statutory text imposes a bar on complaints related to earlier-filed, "pending" actions. The command is simple: as long as a first-filed complaint remains pending, no related complaint may be filed. Further, Rule 9(b) is designed to protect defendants in fraud cases from frivolous accusations and allow them to prepare an appropriate response. Section 3730(b) is designed to allow recovery when a *qui tam* relator puts the government on notice of potential fraud being worked against the government, but to bar copycat actions that provide no additional material information. As the district court found, a complaint may provide the government sufficient information to launch an investigation of a fraudulent scheme even if the complaint does not meet the particularity standards of Rule 9(b). *Batiste*, 740 F. Supp.2d at 104. Imposing the heightened pleading standard, moreover, would create a strange judicial dynamic, potentially requiring one district court to determine the sufficiency of a complaint filed in another district court, and possibly creating a situation in which the two district courts disagree on a complaint's sufficiency.

Finally, Batiste and the government's analysis of the incentives such a requirement would create are unpersuasive.

Like the Sixth Circuit, they suggest that according preclusive effect to an overly broad first-filed complaint would encourage would-be *qui tam* relators to file non-specific suits to block other potential relators from sharing in their bounty. *See Walburn*, 431 F.3d at 973. This reasoning, however, does not make sense. Even without grafting a Rule 9(b) requirement onto the first-to-file rule, the first plaintiff's complaint is still subject to the Rule 9(b) pleading requirements in order for a court to hear the case. If the first relator did not plead fraud with particularity, his complaint would be dismissed and he would lose his own shot at monetary reward. The threat of a second application of Rule 9(b) is unnecessary. As observed in *United States ex rel. Folliard v. Synnex Corp.*, No. 07-cv-719, slip op. at 9-10 (D.D.C. July 19, 2011), imposing such a requirement "would not minimize duplicative claims, would encourage opportunistic behavior, and would have a negligible impact on desirable whistle-blowing." We therefore reject Batiste's argument that first-filed *qui tam* complaints must meet a heightened pleading standard under Rule 9(b) in order to bar later-filed complaints.

## C. Dismissal with Prejudice

Batiste argues that because Zahara's complaint was dismissed before Batiste's complaint was dismissed, his complaint should not have been dismissed with prejudice (implying that Batiste would like the opportunity to amend his complaint and bring this case again). Batiste, however, waived this argument. *Zahara* was dismissed eighteen months prior to the *Batiste* dismissal. During that time, Batiste never asked for leave to amend his complaint in the district court; thus, he has waived his opportunity to file a new suit on these same grounds now. *See Confederate Mem'l Ass'n v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993) (recognizing that although leave to amend generally should be freely granted, that decision is left to the district court's discretion, and, as in the present case, not only was there no abuse of discretion, "it appears

that appellants never properly requested an opportunity to amend in the District Court").

### III.  Conclusion

For the reasons set forth above, we affirm the district court's dismissal of the complaint.

*So ordered.*