# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-3514

_____

Norman Rille, United States of America, ex rel.; Neal Roberts, United States of America, ex rel.

*Plaintiffs - Appellees*

United States of America

*Intervenor plaintiff - Appellant*

v.

PricewaterhouseCoopers LLP; PWC Consulting LLC; International Business Machines, Inc.; IBM Global Services Company; Oracle Corporation; Boeing Company; Cisco Systems, Inc.; Exostar Corporation; Exostar LLC; Lockheed Martin Corporation

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 26, 2013
Filed: April 10, 2014

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

Norman Rille and Neal Roberts (the relators) brought several related *qui tam* actions against certain government contractors alleging the contractors committed fraud against the government by means of kickback and defective pricing schemes in violation of the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733, the Anti-Kickback Act, 41 U.S.C. §§ 51-52, and other federal statutes. Cisco Systems, Inc. (Cisco) was one contractor sued by the relators. The government intervened in the action against Cisco, adopted the relators' complaint, and settled the action against both Cisco and its distributor, Comstor, for $48 million. The relators' action was dismissed with prejudice as part of the settlement. Pursuant to 31 U.S.C. § 3730(d)(1), the district court[1] awarded the relators $8,081,200.

The government appeals, contending the relators were not entitled to any share of the recovery because the settlement was not "proceeds of the action" under § 3730(d)(1), even though the government's receipt of the settlement was conditioned upon the dismissal of the relators' action with prejudice. We affirm.

I

In September 2004, the relators filed several related complaints on behalf of the United States alleging a number of computer equipment and software manufacturers (hereinafter the contractors) had engaged in fraud in connection with government contracts. More specifically, the relators alleged the contractors paid kickbacks to systems integration consultants (SICs) in exchange for the SICs recommending the contractors' products to the government rather than recommending some other company's products. The relators also alleged, by reason of the kickbacks, the contractors were defectively pricing contracts in violation of the FCA.

---

[1]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

As relevant to the defective pricing scheme, an amended complaint filed by the relators alleged

> as part of the schemes to defraud the Government and concealment, Defendants failed to provide to [General Services Administration] and other government agencies current, accurate, and complete disclosure of their best pricing (after all discounts, rebates, and other benefits) for any entities, whether such sells to the Government or not, all in violation of TINA[2] and other laws and regulations, thereby causing defective GSA and other government pricing schedules. This resulted in FCA violations, as to both direct sales to the Government by a Defendant, and indirect sales through an SI, Alliance, or Technology Vendor, with or without a Kickback.

Thus, the relators alleged defective pricing occurred in relation to the kickback scheme, but also alleged a broader practice of defective pricing in which the contractors – in government contracts "with or without a Kickback" – failed to reveal to the government the best prices provided to non-government purchasers.

In September 2005, the relators amended one of their complaints to add Cisco as a defendant contractor. The government later intervened in actions against several other contractors, but did not intervene in the action against Cisco.[3] For the next twelve months, the relators continued to investigate Cisco and its confederates, including its distributor, Comstor.[4] At the same time, the relators sought government

---

[2]The Truth in Negotiations Act (TINA), 10 U.S.C. § 2306a.

[3]The government intervened in an action the relators brought against Hewlett Packard (HP). The district court awarded the relators a share of the recovery in the HP case. The government appealed, making arguments similar to those made in this case. We disagreed with the government's arguments and affirmed the relators' award. See Roberts v. Accenture, LLP, 707 F.3d 1011, 1022 (8th Cir. 2013).

[4]Comstor is now known as Westcon Group North America, Inc.

intervention in the Cisco action, delivering hundreds of thousands of documents to the government which the relators had located, stored, reviewed, and analyzed. Among the many items the relators flagged for the government's attention were documents demonstrating Cisco contracted with the government through its distributor, Comstor, but made pricing disclosures directly to the government itself. Comstor then passed on discounts to Cisco's vendors without the discounts being disclosed to the government.

The government finally intervened in the action against Cisco in April 2008, acknowledging in its motion to intervene it was doing so in part based on having "received and considered additional information from the Relators." Although the government typically files its own complaint after intervening in a relator's *qui tam* action, in this case the government decided to simply adopt the relators' complaint against Cisco.[5]

In September 2010, the government settled the Cisco action. The settlement included an amount paid by Cisco's distributor, Comstor. The government contends it agreed with Cisco that the relators' kickback claims lacked merit. The settlement focused instead upon the defective pricing scheme between Cisco and Comstor, in which Cisco contracted with the government through Comstor and then hid the true nature of its relationship with Comstor from the government in order to limit the information Cisco had to disclose about its pricing practices. The government contends it discovered the Comstor/Cisco fraud during a routine audit, and not as a result of the additional information it received from the relators' which led it to

---

[5]The relevant complaint is the relators' Third Amended Complaint.

intervene.[6] The settlement agreement described the conduct covered by the settlement and stated Cisco and Comstor:

> (1) made inaccurate and/or incomplete disclosures and/or false statements, and/or presented or caused to be presented false claims to the United States; (2) failed to disclose relevant discount, rebate, true-up, benefits, credits, value-added, and pricing information to the United States and, as a result, Contract pricing and orders issued pursuant to the Contract were inflated; (3) as a result of the defective disclosures of pricing information, submitted or caused to be submitted false or fraudulent claims for payment; and (4) failed to comply with price reduction obligations under the Contract and related letters of supply.

The government collected $44.16 million from Cisco and $3.84 million from Comstor. The relators were not parties to the settlement agreement. Significantly, however, Comstor and Cisco conditioned the settlement upon the dismissal with prejudice of the relators' action.

Following the settlement, the relators brought a motion to recover a statutory share of the settlement proceeds pursuant to 31 U.S.C. § 3730(d)(1).[7] Seven months

---

[6]In Roberts, the government similarly claimed the information material to its settlement with HP was discovered as a result of an internal audit – unrelated to the relators' action – the results of which led HP to "voluntarily" disclose its defective pricing scheme to the government. The district court rejected the government's claim and found the internal audit was conducted in response to the relators' litigation efforts. We affirmed the district court, stating "the government's claim that HP's disclosure of its defective pricing . . . was purely 'voluntary,' and that the relators' pending action and assistance in prosecuting the action played no role in uncovering the defective pricing scheme, is disingenuous." Roberts, 707 F.3d at 1017.

[7]The relevant portion of § 3730(d)(1) states: "If the Government proceeds with an action brought by a [private] person . . . such person shall . . . receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim[.]"

after the settlement, in response to the relators' motion for a statutory share of the settlement proceeds, the government moved to dismiss the relators' complaint for failure to plead defective pricing with sufficient particularity. The government claimed the relators' complaint did not state a claim for relief, even though the government had adopted the same complaint when it intervened.

The district court denied the government's motion to dismiss and granted the relators' motion for a statutory share of the recovery. The district court awarded the relators 17% of the $44.16 million settlement with Cisco in the amount of $7,507,200, and 15% of the $3.84 million settlement with Comstor in the amount $576,000, for a total award of $8,081,200. United States ex rel. Rille v. Cisco Sys., Inc., No. 4:04CV00988, 2011 WL 4352309 at *4 (E.D. Ark. Sept. 19, 2011).

The government filed a timely appeal. On appeal, the government contends the claims it settled with Cisco and Comstor were unrelated to the relators' action and therefore the settlement funds did not constitute "proceeds of the action or settlement of the claim" under § 3730(d)(1). The government also argues the district court erred when it failed to apply the pleading standards under Rule 9(b) of the Federal Rules of Civil Procedure for purposes of determining a relator's right to recover a share of the proceeds under § 3730(d)(1). Finally, the government contends the district court should not have awarded the relators a share of the $3.84 million settlement with Comstor because Comstor was not identified by name in the relators' complaint.

II

When reviewing an award of statutory fees under § 3730(d)(1), the district court's factual findings are reviewed for clear error and its legal conclusions are reviewed de novo. Roberts v. Accenture, LLP, 707 F.3d 1011, 1015 (8th Cir. 2013).

A

We first address the government's contention that it can rely on Rule 9(b) to challenge a relator's right of recovery under the FCA. The government raised this same issue in Roberts. There we squarely "reject[ed] the contention that Rule 9(b) plays a part in determining whether a relator is entitled to share in the settlement proceeds resulting from a *qui tam* action in which the government elects to intervene." Id. at 1017.

Our decision in Roberts applies with equal force here. Indeed, the soundness of our previous conclusion is reinforced when applied to the facts of this case. In Roberts, the government filed its own complaint against the contractors after intervening in the relators' action. Here, the government not only decided to intervene in the relators' action, but simply adopted the relators' complaint upon intervening. The government then successfully settled a defective pricing claim against Cisco, recovering $48 million, but contends the complaint it adopted never alleged a legally adequate defective pricing claim.

As we explained in Roberts, "[i]f the government is allowed to contend at the conclusion of a case that a relator's initial allegations were insufficient, even though the government implicitly acknowledged the legal sufficiency of the pleadings by choosing to intervene, the relator no longer has the opportunity to cure the deficiency." Id. at 1018. We found "nothing in the FCA's statutory text to support this type of *post hoc* use of Rule 9(b) to deny a relator the right to a share of the settlement proceeds," id., in large part because a relator's *qui tam* complaint serves its purpose when it "'provides the government sufficient information to pursue an investigation' into the allegedly fraudulent practices" of a *qui tam* defendant. Id. (quoting United States ex rel. Batiste v. SLM Corp., 659 F.3d 1204, 1210 (D.C. Cir. 2011)). This purpose can be served "even if the complaint does not meet the particularity standards of Rule 9(b)." Batiste, 659 F.3d at 1210; see also United

States ex rel. Heinemen-Guta v. Guidant Corp., 718 F.3d 28, 35 (1st Cir. 2013) (concluding a *qui tam* complaint "need not comport with Rule 9(b)'s pleading requirements to provide the government with sufficient notice of potential fraud"). Based on our decision in Roberts, we conclude the district court did not err by refusing to apply Rule 9(b) pleading standards when determining whether the relators were entitled to a statutory share of the government's recovery under § 3730(d)(1).

B

The government also claims its settlement with Cisco and Comstor was unrelated to the relators' *qui tam* action, and thus the relators are not entitled to share in the government's recovery.

In a *qui tam* action in which the government elects to intervene, the FCA requires that a relator **shall** receive between fifteen and twenty-five percent "of the proceeds of the action or the settlement of the claim." 31 U.S.C. § 3730(d)(1).[8] The statute contains two preconditions to an award. First, the government must "proceed[] with an action" originally "brought by" a relator under 31 U.S.C. § 3730(b). Id. This precondition was satisfied here when the government elected to intervene in the action originally brought by the relators against Cisco. Second, the government must receive "proceeds of the action or settlement of the claim." Id. The government argues this precondition was not satisfied. The government contends the claim it settled with Cisco and Comstor was factually unrelated to the action brought by the relators against Cisco, and thus the relators are not entitled to share in the corresponding recovery. We reject this contention.

_____

[8]None of the three exceptions which might permit an additional reduction of the relator's "finder's fee," see Roberts, 707 F.3d at 1016 (discussing the statutory exceptions set forth in § 3730(d)(3) which permit the relator's guaranteed minimum to be further reduced), are applicable here.

In a case such as this, where the government elects to intervene in a relator's action and receives settlement proceeds conditioned upon the dismissal of the relator's action with prejudice, we conclude as a matter of law that the settlement funds constitute "proceeds of the action" under § 3730(d)(1). We find no support in the law for the government's suggestion it did not settle the claims or the action brought by the relators, when the government's receipt of the settlement funds required the relators' claims and the action itself to be dismissed with prejudice. The government cannot compromise a relator's action by having it dismissed with prejudice and then claim the funds it received as a direct consequence are not "proceeds of the action." Cf. United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 650 (6th Cir. 2003) ("[T]he government may not settle a relator's claims and seek to avoid paying a relator his or her statutory share to the settlement proceeds by excluding the relator's claims from the terms of the settlement agreement."). We conclude the district court correctly awarded the relators a share of the government's recovery.

C

Finally, the government contends the relators should not get a share of the separate settlement amount paid by Comstor. The government's sole argument in this regard is based upon the fact that Comstor was not identified by name in the relators' complaint. The government contents the complaint therefore did not satisfy Rule 9(b)'s pleading standards with respect to Comstor. As we stated above and in Roberts, however, Rule 9(b) pleading standards are not relevant to whether a relator is entitled to a statutory share of a *qui tam* recovery pursuant to § 3730(d)(1). The government's argument regarding the separate amount paid by Comstor fails for this reason alone.

In addition, the settlement amount paid by Comstor arose out of the action the relators originally brought against Cisco. Comstor's fraudulent practices were identified by the relators prior to the government's intervention. The government's

intervention robbed the relators of the ability to further refine their complaint by adding specific allegations against Comstor. The government then reached a settlement with Comstor involving the fraudulent practices first identified by the relators. The government ultimately settled the claim involving Comstor's fraudulent practices and dismissed the relators' action with prejudice. The government's conduct thus precludes the relators from pursuing a separate *qui tam* action against Comstor. See Gurley v. Hunt, 287 F.3d 728, 731 (8th Cir. 2002) ("[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (quotation marks omitted).

Under such circumstances, the relators are entitled to a statutory share of the recovery, because "[a] primary purpose of the FCA is to encourage whistleblowers to come forward with allegations of fraud perpetrated upon the government, and to reward them when they do so." Roberts, 707 F.3d at 1018 (internal citation omitted). "This purpose is advanced when a relator files a complaint which 'provides the government sufficient information to pursue an investigation' into the allegedly fraudulent practices." Id. (quoting Batiste, 659 F.3d at 1210). The FCA's purpose was advanced in this case with respect to the allegations regarding Comstor's fraudulent practices, and it would defeat such purpose if the relators were not rewarded accordingly.

The government's contention regarding Comstor also ignores the dynamic realities of litigation, where the allegations originally made in a complaint take on less importance as the litigation progresses and a plaintiff uncovers more details about a defendant's alleged wrongdoing through the process of discovery. As more is discovered, a plaintiff's theory of liability becomes more refined. That is exactly what occurred here. Over the course of litigating their action on their own for several years, the relators uncovered the defective pricing scheme between Cisco and Comstor through the hundreds of thousands of documents they located, stored, reviewed and analyzed. The relators passed this information on to the government,

and the government then chose to intervene in the relators' action and take advantage of the relators' substantial efforts.

Furthermore, the government may undertake its own efforts at uncovering government fraud once it decides to intervene in a relator's action, and may further refine its theories of liability. This, again, is the natural process of litigation. Thus, in many cases the alleged fraudulent activity alleged in a *qui tam* action will come into sharper focus after the government elects to intervene. But, as long as the relator is an original source of the information on which the fraud allegations are based, the relator is still entitled to the minimum "finder's fee," see Roberts, 707 F.3d at 1016 (quoting 132 Cong. Rec. H9382-03), for doing nothing more than bringing the information regarding the fraud forward and filing the action in federal court. See, e.g., Batiste, 659 F.3d at 1210 ("[The FCA] is designed to allow recovery when a *qui tam* relator puts the government on notice of potential fraud[.]"). We therefore conclude the district court correctly awarded the relators a share of the settlement funds the government received from both Cisco and Comstor.

III

We affirm the district court.

COLLOTON, Circuit Judge, dissenting.

In *Roberts v. Accenture, LLP*, 707 F.3d 1011 (8th Cir. 2013), the same two *qui tam* relators proceeding under the False Claims Act argued that if the government proceeds with an action brought by a relator, then the relator is automatically entitled under 31 U.S.C. § 3730(d)(1) to a percentage of any "proceeds" that the government receives as a result—even if the government recovers on new claims that are factually unrelated to those brought by the relator. In response to a dissenting opinion that rejected the relators' position based on the text and structure of the statute, the court

in *Roberts* seemingly asserted that its decision was narrower, because the district court purportedly found as a matter of fact that the claims settled by the government were the same as the claims brought by the relators. *Id*. at 1022. The full court then denied the government's petition for rehearing *en banc* by a vote of four to three, with three judges not participating and one vacancy on the court.

The court in this case abandons any pretense that a relator's recovery is limited to the proceeds of the claim brought by the relator and settled by the government. Instead, the court accepts the relators' interpretation of the statute whole hog: "[W]here the government elects to intervene in a relator's action and receives settlement proceeds conditioned upon the dismissal of the relator's action with prejudice, we conclude as a matter of law that the settlement funds constitute 'proceeds of the action' under § 3730(d)(1)." *Ante*, at 9. The court requires no finding of factual overlap between the relator's claim and the claims settled by the government. Even where the settlement is attributable to factually unrelated claims that were developed and added by the government after its intervention in the action, the court construes the statute to require at least a fifteen-percent recovery for the relators. For the reasons discussed in the *Roberts* dissent, 707 F.3d at 1022-26 (dissenting opinion), the court's conclusion is inconsistent with the text, structure, and purposes of the statute. The relator is entitled to a share of proceeds from the settlement of a claim brought by the relator or the proceeds of an action as brought by the relator. He should not recover proceeds from the settlement of factually unrelated claims that were not brought by the relator.

The district court did not find that the settlement in this case was based on claims that were factually related to the claims brought by the relators. Instead, the court apparently relied on its conclusion that the relators "were the catalyst leading to the Government's settlement," while acknowledging that the relators "were more focused on a kickback scheme that the Government asserts did not exist." R. Doc. 237, at 7-8. As discussed in *Roberts*, the notion that a relator is entitled to recover

proceeds of a settlement because he was a "catalyst" leading to the settlement of different claims brought by the government is not derived from the statute. "The statute allows relators to recover a percentage of the proceeds of the settlement of 'the claim' brought by the relators, and only that claim." 707 F.3d at 1024 (dissenting opinion).

I would vacate the judgment and remand for application of the correct legal standard.

_____