Opinion for the Court filed by Senior Circuit Judge SENTELLE.
Opinion concurring in part and dissenting in part filed by Circuit Judge SRINIVASAN.
*340 SENTELLE, Senior Circuit Judge:
Relator Stephen M. Shea, on behalf of the United States, appeals the district court’s dismissal of his qui tam complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The district court held that a complaint Shea had earlier filed barred its consideration of this complaint under the first-to-file rule of the federal False Claims Act (“FCA”), 31 U.S.C. § 3730(b)(5). We affirm the district court. We hold that this complaint is sufficiently related to Shea’s earlier action, that the first-to-file bar applies to Shea even though he brought the first action, and that the bar remains in effect even after the first action is no longer pending.
I. BacKGround
A. Verizon I
On January 16, 2007, Stephen M. Shea filed a complaint on behalf of the United States government against Verizon (Verizon I) under the qui tam provisions of the FCA, 31 U.S.C. §§ 3729-3732. The FCA authorizes private parties (“relators”) to bring false claims actions in the name of the United States, and to recover a portion of the proceeds of the action if successful. See id. § 3730(b), (d).
Shea’s 2007 complaint alleged the submission of false claims by Verizon. More specifically, the complaint contained the following allegations: (1) that Verizon made “knowing submission to the United States of certain prohibited surcharges under contracts to provide telecommunications services” to the General Services Administration (“GSA”); (2) that Shea is a telecommunications consultant; (3) that Shea based his allegations on experience with Verizon’s alleged practice of “billing corporate clients not only for federal, state and local taxes levied on the customer but also for surcharges (often labeled as, or lumped together with, taxes) that were added to bills ... to inflate ... revenue,” 2007 Complaint ¶¶ 2, 12; (4) that Verizon used “the same billing platform” for both business customers and the United States, 2007 Complaint ¶¶ 6, 81; (5) that through this practice, Verizon charged the government “Federal, State, and local taxes and duties” contrary to Federal Acquisition Regulations (“FAR”), FAR 52.229-4(b), 48 C.F.R. 52.229-4(b), 2007 Complaint ¶20; and (6) that Shea became aware of the alleged conduct through an internal document he received in 2004 which listed “the taxes and surcharges that the Federal Government is responsible for.” 2007 Complaint ¶ 70. The United States intervened in Verizon I, and in February 2011, the parties settled the case without admission of liability. Shea received nearly $20 million for his role in the litigation.
B. Verizon II
Shea filed the present second qui tam action against Verizon (Verizon I) on June 5, 2009, and on September 12, 2012 filed a Second Amended Complaint (“SAC”). The SAC closely mirrors Shea’s complaint in Verizon I: (1) it too alleges a scheme by Verizon “to defraud the United States by knowingly billing the government for non-allowable surcharges,” SAC ¶ 1; (2) it traces Shea’s knowledge to “his experience consulting with large commercial telecommunications customers” through which he “learned that most telecommunication carriers, including ... Verizon ... had a custom and practice of charging [Non-Allowable Charges],” SAC ¶ 3; (3) it identifies the same 2004 document as the source of his information, SAC ¶ 4; and (4) it alleges that Verizon “overcharged the United States, just like its commercial customers” by billing non-allowable charges on several government contracts. SAC ¶¶ 4, 28. The only difference between the 2007 Com *341 plaint and the SAC is that the SAC expands Shea’s allegations to more contracts, more charges, and more governmental agencies.
C. Procedural History
On November 15, 2012, the district court dismissed Shea’s complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). U.S. ex rel. Shea v. Verizon Bus. Network Servs. Inc., 904 F.Supp.2d 28, 37 (D.D.C.2012). The court held that under the FCA’s first-to-file bar, Shea’s complaint in Verizon I barred the court’s consideration of his complaint in Verizon II. The first-to-file bar provides that “[w]hen a person brings an action under [The FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.” 31 U.S.C. § 3730(b)(5).
The district court concluded that Verizon II was barred because it alleged “a fraudulent scheme the government already would be equipped to investigate” based on the complaint in Verizon I. Shea, 904 F.Supp.2d 28 at 36 (quoting United States ex rel. Batiste v. SLM Corp., 659 F.3d 1204, 1209 (D.C.Cir.2011)). Shea argued that dismissal under the first-to-file bar should be without prejudice, because Verizon I was no longer pending when the court disposed of Verizon II; thus, Shea urged, he should be able to re-file his action. The district court disagreed. This appeal followed.
II. Analysis
Shea raises three arguments on appeal: (A) the district court erred in finding Verizon I and Verizon II related because they involve different contracts and different agencies; (B) the district court improperly held that the first-to-file bar applies to Shea even though he was the relator in both actions; and (C) the district court erred in dismissing Verizon II with prejudice because Verizon I was no longer pending when Shea filed his second amended complaint in Verizon II.
Reviewing the dismissal for lack of jurisdiction de novo, see Batiste, 659 F.3d at 1208, we agree with the district court that this complaint is “related” — within the meaning of the FCA — to Shea’s earlier action, that the first-to-file bar applies to Shea even though he brought the first action, and that the bar remains effective even after the first action is no longer pending.
A. Same Material Elements of Fraud
Under the first-to-file bar, “[w]hen a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.” 31 U.S.C. § 3730(b)(5). A second action is “related” if it incorporates “the same material elements of fraud” as the earlier-filed action. U.S. ex rel. Hampton v. Columbia/HCA Healthcare Corp., 318 F.3d 214, 217 (D.C.Cir. 2003). “[T]wo complaints need not allege identical facts for the first-filed complaint to bar the later-filed complaint.” Batiste, 659 F.3d at 1208. Instead, later actions are barred where the first would have “suffice[d] to equip the government to investigate” the fraud alleged in the later action. Id. at 1209.
Shea argues that Verizon I and Verizon II are unrelated. He seizes on language in Batiste, where we noted that one aspect of the relatedness inquiry goes to whether the second complaint would “give rise to a different investigation or recovery” than the first. Batiste, 659 F.3d at 1210. As Shea notes, Verizon II includes agencies, contracts, and charges not included in Verizon I. These differences would necessitate *342 farther investigation, and — were Shea successful — result in additional recovery. Because Verizon II would give rise to a different investigation and further recoveries, he contends, the actions are not related. We are unconvinced.
On Shea’s reasoning, two complaints would have to be identical in order to be “related.” After all, any difference in any aspect of a later complaint could result in some “different investigation or recovery.” Cf. Batiste, 659 F.3d at 1210. Relatedness is broader than identity. As we noted in Batiste, the first-to-file rule serves two purposes: “rejecting suits which the government is capable of pursuing itself,” and “promoting those which the government is not equipped to bring on its own.” Id. at 1208 (quoting Hampton, 318 F.3d at 217). A side-by-side comparison shows that Verizon II is precisely the kind of action barred under this standard.
Both complaints claim that Shea discovered the alleged scheme based on his experience as a telecommunications consultant. See 2007 Complaint ¶ 12; SAC ¶ 3. Both complaints trace Shea’s knowledge to the same billing document he received in 2004. 2007 Complaint ¶ 70; SAC ¶ 4. Both complaints allege that Verizon billed the U.S. government with the same system it used for commercial customers. 2007 Complaint ¶ 81; SAC ¶ 27. And both allege that through this system Verizon billed the U.S. government prohibited surcharges. 2007 Complaint ¶ 20; SAC ¶ 4. In point of fact, Verizon II is indistinguishable from Verizon I except as to its scope. Yet the allegations and legal theory of Verizon I would alert the government to the possibility of a fraudulent scheme that went beyond the specifics of Verizon I. Shea’s allegations centered on Verizon’s “uniform billing practices,” through which it overcharged the government and corporate clients alike. 2007 Complaint ¶¶ 6, 81. Presumably, if Verizon’s billing practice was truly uniform, • it was so as to all government contracts, not just the GSA.
Under Batiste, these complaints allege the same fraudulent scheme. See Batiste, 659 F.3d at 1209. Verizon I would suffice to equip the government to investigate Shea’s expanded allegations in Verizon II. See id. The district court properly held that Shea’s second complaint was “related” to the first within the terms of the FCA’s first-to-file bar.
B. Same Relator
Shea’s second argument goes to the identity of the relator. Shea argues that the first-to-file bar applies only to litigants other than the relator who filed the original action. His argument runs as follows: The first-to-file bar prohibits subsequent relators from “intervene[ing] or bring[ing] ... action[s]” related to a previously-filed action. 31 U.S.C. § 3730(b)(5). It would be nonsense, he argues, for a litigant to intervene in an action he himself brought. And because it would be nonsense for a relator to intervene in his own suit, “no person” in the statute cannot logically refer to the same relator — in fact, it must be understood to mean “no person other than the original relator.” We disagree.
The text of the statute clearly directs that “no person” is allowed to bring a related suit. “[Cjourts must presume that a legislature says in a statute what it means and means in a statute what it says there.” Conn. Nat. Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). And it is not nonsense to disallow all persons' — the original relator included — from bringing a related action. The statute is written in the disjunctive. A second relator need not be capable of both forms of prohibited behavior to be eligible for the prohibition. On Shea’s reasoning, a statute that provided *343 that “no vehicles may fly over or drive through a field” could only apply to vehicles that could both fly and drive. No rule of grammar, logic, or the law compels such a reading.
Nor are Shea’s policy arguments persuasive. Shea rightly points out that one purpose of the first-to-file bar is to encourage “whistleblowers to approach the government and file suit as early as possible.” See United States ex rel. Ortega v. Columbia Healthcare, Inc., 240 F.Supp.2d 8, 12 (D.D.C.2008). As he notes, a litigant cannot race himself to the courthouse or divide a bounty with himself. But Shea again ignores the other purpose: “rejecting suits which the government is capable of pursuing itself.” Batiste, 659 F.3d at 1208. The plain-text reading of the statute advances both goals. We therefore reject Shea’s argument that the first-to-file bar does not apply to an original relator.
C. Dismissal with Prejudice
Finally, Shea argues that the district court erred in dismissing his claim with prejudice. Shea reads the first-to-file bar as a temporal limit on related suits. So long as the first action is no longer pending, Shea reasons, the second action is not barred. Verizon, supported by the Chamber of Commerce of the United States of America as amicus curiae, urges us to read “pending action” in the statute as shorthand for “first-filed action.” Thus, a related action is barred regardless of the posture of the first-filed action. We agree with Verizon.
Shea makes two arguments for his reading. First, he argues that had Congress intended the bar to continue into perpetuity it could have done so by omitting the term “pending.” Verizon’s interpretation would actually make more sense, he contends, had the statute read, “[wjhen a person brings an action under [the FCA], no person ... may ... bring a related action based on the facts underlying the ... action.” 31 U.S.C. § 3730(b)(5). Second, Shea argues that we have suggested support for his reading in the past. In Batiste, for instance, we characterized “[t]he command [as] simple: as long as a first-filed complaint remains pending, no related complaint may be filed.” 659 F.3d at 1210.
The language Shea quotes from Batiste is dicta. There, the second relator (Batiste) also argued that because the first relator’s (Zahara’s) complaint was dismissed before his, “his complaint should not have been dismissed with prejudice.” Batiste, 659 F.3d at 1211. But the first action “was dismissed eighteen months pri- or to the Batiste dismissal.” Id. “During that time, Batiste never asked for leave to amend his complaint in the district court.” Id. Thus, we held, Batiste “waived his opportunity to file a new suit on the same grounds.... ” Id. Today we must resolve the question not reached in Batiste. We hold that the first-to-file bar applies even if the initial action is no longer pending, because we read the term “pending” in the statutory phrase “pending action” to distinguish the earlier-filed action from the later-filed action. Several points support this reading.
First, as Verizon points out, Shea’s reading actually supplements the plain text. Shea reads the bar as if it provided that “when a person brings an action under this subsection, no person other than the Government may intervene or bring a related action while the first action remains pending.” But this is not what the statute says. Instead it makes clear that the bar commences “when a person brings an action under this subsection,” and thence forth bars any action “based on the facts underlying the pending action.” The simplest reading of “pending” is the referential one; it serves to identify which action bars the other.
*344 Second, Congress could have expressed its intent to make the fírst-to-fíle bar temporal, as it has done in other contexts. For instance, Congress has barred “any claim [in the Court of Federal Claims] for ... which the plaintiff ... has pending in any other court any suit or process against the United States....” 28 U.S.C. § 1500 (emphasis added); see also 42 U.S.C. § 300aa-ll(a)(5)(B) (precluding a person from bringing a vaccine-related claim in the Court of Federal Claims if he or she “has pending a civil action for damages for a vaccine-related injury or death” (emphasis added)). Congress excluded similar language in the first-to-fíle bar.
Finally, our reading better suits the policy considerations undergirding the statute. See Batiste, 659 F.3d at 1208. The resolution of a first-filed action does not somehow put the government off notice of its contents. On the other hand, reading the bar temporally would allow related qui tam suits indefinitely — no matter to what extent the government could have already pursued those claims based on earlier actions. Such duplicative suits would contribute nothing to the government’s knowl-, edge of fraud. And Shea has forwarded no reason why the rule should be read to bar a related claim one day but not the next. Accordingly, we reject Shea’s argument that the first-to-file bar represents a temporal limit on related actions. The district court did not err in dismissing Verizon II with prejudice.
Appellant has pointed out that three of our sibling circuits have reached the opposite conclusion on the construction of the word “pending.” Of course the decisions of other circuits are not binding upon us, but we have nonetheless reviewed those decisions respectfully and conclude that none of them convinces us of a construction other than the one we reach today. The Seventh Circuit, in United States ex rel. Chovanec v. Apria Healthcare Grp., Inc., 606 F.3d 361 (7th Cir.2010), only states the conclusion that “[a]s we explained above ... § 3730(b)(5) applies only while the initial complaint is ‘pending.’ ” Id. at 365. The explanation “above” is likewise a conclusory statement that “no one other than the Government may ‘bring a related action’ while the first is ‘pending.’ ” Id. at 362. We do not mean to disparage the opinion of the Seventh Circuit, but note that the issue of focus in the Chovanec litigation was the relatedness of the actions rather than the meaning of pendency. The references to the necessity of pendency are more dicta than holding.
Similarly, the Tenth Circuit, in In re Natural Gas Royalties Qui Tam Litigation, 566 F.3d 956 (10th Cir.2009), does refer to “[t]he fact that § 3730(b)(5) applies only when another qui tam action is ‘pending’.... ” Id. at 963. However, this statement is pure dicta and is unaccompanied by any reasoning as to the construction of the term “pending.”
Only the Fourth Circuit actually seems to have given consideration to the meaning of “pending” as a controlling issue in a case before it. While that circuit has considered the question twice, the second opinion, United States ex rel. May v. Purdue Pharma L.P., 737 F.3d 908, 920 (4th Cir.2013), relies on the first, United States ex rel Carter v. Halliburton Co., 710 F.3d 171, 182-83 (4th Cir.2013). Carter, in turn, relies on the Tenth Circuit decision in Natural Gas Royalties without directly comparing the two conflicting constructions of “pending,” as we do today. For the reasons set forth above, we will respectfully disagree with the other circuits.
III. Conclusion
For the reasons set forth above, we affirm the district court’s dismissal of the complaint.

So ordered.