198 F.3d 913 (D.C. Cir. 1999)
 United States of America ex rel. Earl S. Settlemire, Appellant
v.
The District of Columbia, Appellee
 No. 98-7180
 United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued September 8, 1999
Decided December 21, 1999
 
 [Copyrighted Material Omitted]
 Appeal from the United States District Court for the District of Columbia(No. 96cv00568)
 Joyce E. Mayers argued the cause and was on the briefs for appellant. Pamela J. Bethel entered an appearance.
 Donna M. Murasky, Assistant Corporation Counsel, argued the cause for appellee. With her on the briefs were John M. Ferren, Corporation Counsel at the time the main brief was filed, Jo Anne Robinson and Robert R. Rigsby, Interim
 Corporation Counsel at the time supplemental briefs were filed, and Charles L. Reischel, Deputy Corporation Counsel.
 Douglas N. Letter, Attorney, U.S. Department of Justice, argued the cause for the United States as amicus curiae. With him on the brief were David W. Ogden, Acting Assistant Attorney General, Michael F. Hertz and David M. Gossett, Attorneys, and Wilma A. Lewis, U.S. Attorney.
 Before: Edwards, Chief Judge, Sentelle and Randolph, Circuit Judges.
 Opinion for the Court filed by Circuit Judge Sentelle.
 Sentelle, Circuit Judge:
 
 
 1
 Appellant-relator Earl S. Settlemire brought this qui tam action against the District of Columbia, alleging that the District spent funds appropriated by the United States for purposes other than those intended by Congress, thereby violating the False Claims Act ("FCA" or "Act"), 31 U.S.C. §§ 3729-3733 (1994). The district court dismissed the action for lack of subject matter jurisdiction. We agree with the district court that Settlemire's allegations fall within the Act's jurisdictional bar against actions based on publicly disclosed information. See 31 U.S.C. 3730(e)(4)(A).Because we further hold that Settlemire has not satisfied the original source exception to the jurisdictional bar, we affirm the district court's dismissal of this action.
 
 I. Background
 
 2
 Under the FCA, a private party may bring suit for fraud committed against the United States. The ability to bring such actions is limited by the "public disclosure" provision of the Act, which divests courts of jurisdiction over claims "based upon the public disclosure of allegations or transactions" in specified types of public proceedings, "unless ... the person bringing the action is an original source of the information." 31 U.S.C. 3730(e)(4)(A). An original source is a plaintiff with "direct and independent knowledge" of the relevant facts who has revealed his knowledge to the Government before public disclosure and before filing suit. 31 U.S.C. 3730(e)(4)(B); see United States ex rel. Findley v. FPC-Boron Employees' Club, 105 F.3d 675, 690 (D.C. Cir.), cert. denied, 118 S. Ct. 172 (1997). This creates a two-step process in which a court decides whether the action is based on publicly disclosed information, and if so, whether the plaintiff may still proceed because he is an original source of that information.
 
 
 3
 Settlemire brought suit under the FCA alleging the following facts. In 1989, the government of the District of Columbia requested federal financial assistance in order to increase the officer strength of the Metropolitan Police Department ("MPD"). Congress subsequently enacted the District of Columbia Police Authorization and Expansion Act of 1989, Pub. L. No. 101-223, 2, 103 Stat. 1901, 1901-02 ("Expansion Act") (codified at D.C. Code Ann. 47-3406(c) (1997 repl.)), which authorized the appropriation of funds for fiscal years 1990 through 1994 for "salaries and expenses (including benefits) of 700 additional officers and members of the Metropolitan Police Department of the District of Columbia." Id. 2(c)(1). Under the statute, these funds were to be available only to pay for "officers and members of the [MPD] in excess of 4,355 officers and members (and supplies, equipment, and protective vests for reserve officers of the [MPD])." Id. 2(c)(2).
 
 
 4
 Congress first appropriated funds under the Expansion Act for fiscal year 1990, in the amount of $17,630,000. See District of Columbia Appropriations Act, 1990, Pub. L. No. 101-168, 103 Stat. 1267, 1267-71 (1989). The Conference Report accompanying this act recognized that it would be impossible for the District to hire and train enough new police officers above the 4,355 threshold to use all of the appropriated funds. See H.R. Conf. Rep. No. 101-270, at 5-6 (1989).Thus the report stated that the "first priority" of Expansion Act funds was for the hiring of additional officers, but provided that if the funds were not so expended, they "may be used to purchase goods and services in the non-personal object classes including support and other materials as well as capital items." Id.
 
 
 5
 A similar sequence of events occurred for fiscal year 1991.Congress again appropriated funds, and the Conference Report contained the same language. See District of Columbia Appropriations Act of 1991, Pub. L. No. 101-518, 104 Stat. 2224, 2224-29 (1990); H.R. Conf. Rep. No. 101-958, at 10-11 (1990).[1]
 
 
 6
 On May 7, 1990, the District claimed that the police department had reached a staffing level of 4,355 and began to access the Expansion Act funds. A number of Congressional hearings occurred in 1990 and 1991 which included discussions about the use of Expansion Act funds.
 
 
 7
 First, a subcommittee of the Senate Committee on Appropriations held hearings on May 24, 1990. See Hearings Before the Senate Subcomm. of the Comm. on Appropriations, District of Columbia Appropriations for Fiscal Year 1991, 101st Cong. (1990). Mayor Marion S. Barry, Jr. testified as to what was happening to the Expansion Act monies. In his submitted statement he declared: "Now that we are able to access the $17 million we will be using some of those funds for overtime as well as to continue the hiring of the 700 police officers." Id. at 50. During his oral testimony, he explained why the MPD's overtime spending was over budget:
 
 
 8
 Why did we spend it? Because we wanted to demonstrate our commitment. We knew we were going to access the $17 million. We knew it did not require are programming. Only that, as I understand it, we had toreach a police officer level of 4,355 before we could access the $17 million for the police department
 
 
 9
 .....
 
 
 10
 Congress gave us $17.6 million. When you take [the District's other funds] and add it to the $17.6 million that would give us enough overtime money to finish the rest of this year.
 
 
 11
 Id. at 68-69.
 
 
 12
 Isaac Fullwood, Jr., Chief of Police, testified to similar effect:
 
 
 13
 We were spending that money as if we already had access to it.
 
 
 14
 We knew that once we reached a police officer strength of 4,355 that we would have direct access to the funds. It was our understanding that no reprogramming would be required. The money was virtually unencumbered in the way that the Congress intended us to use it, as long as it was used specifically for law enforcement purposes.
 
 
 15
 Id. at 71.
 
 
 16
 On May 22, 1991, a House subcommittee held budget hearings regarding District appropriations for the 1992 fiscal year. See Hearings Before a Subcomm. of the Comm. on Appropriations: Subcomm. on District of Columbia Appropriations, Fiscal Year 1992, 102d Cong. (1991). Chairman Julian Dixon questioned District representatives about the use of Expansion Act funds:
 
 
 17
 When the Mayor sent up her [budget] reductions of $216million, a major part of that was a reduction of some$12.5 million in the police department.
 
 
 18
 From my way of looking at it, it was a reduction of money that you had already received. Is that correct? In other words, you got $17.6 million in fiscal year 1991to hire additional police officers. You have that money in your pocket, and when the Mayor sent up the budget, she said I am going to cut $12.5 million in the police department. My response would be that you already have that money so you are not cutting anything--you are just keeping our money but you are not spending it for the purpose it was intended.
 
 
 19
 Id. at 1160.
 
 
 20
 While Expansion Act funds were being appropriated by Congress, appellant headed the budget branch of the MPD's Office of Finance and Resource Management. He claims that he had access to reports that detail how the District spent Expansion Act funds on items other than for additional officers beyond the 4,355 threshold. He filed the instant action in the district court on March 22, 1996 under seal, as required by the FCA. See 31 U.S.C. 3730(b). After the U.S. Department of Justice notified the district court that it did not wish to intervene, the seal was released, and the complaint served on the District.
 
 
 21
 After discovery, both parties filed motions for summary judgment. The District additionally moved for dismissal for lack of subject matter jurisdiction based upon the jurisdictional limitation of the FCA which bars suits based upon publicly disclosed transactions. See 31 U.S.C. 3730(e)(4).The district court concluded that Settlemire's claims were precluded by the jurisdictional bar, and that Settlemire did not fall under the "original source" exception. Because of these conclusions, the district court dismissed for lack of subject matter jurisdiction. Settlemire has appealed the dismissal.
 
 
 22
 Prior to oral argument, we requested additional briefing on the relevance of United States ex rel. Long v. SCS Business & Technical Inst., 173 F.3d 870 (D.C. Cir.) (holding that a state is not a "person" subject to suit under the FCA), supplemented by, 173 F.3d 890 (D.C. Cir.), petition for cert. filed, 68 U.S.L.W. 3116 (U.S. Aug. 2, 1999) (No. 99-213). The United States submitted an amicus brief and participated in oral argument on that matter. As explained below, we do not reach the issue.
 
 II.
 
 23
 Since its original enactment in 1863, the FCA has allowed any private party to bring suit, on behalf of the United States government, based on that party's knowledge of fraud committed against the government. See Findley, 105 F.3d at 679-81 (reviewing the history of and amendments to the Act);see also 31 U.S.C. 3729(a) (defining the underlying conduct that constitutes a false claim). As an incentive to bring such qui tam suits, the FCA allows a plaintiff to receive a portion of the funds that were the subject of the false claim. See 31 U.S.C. 3730(d).
 
 
 24
 A number of amendments have been made to the Act over the years, including the 1986 amendments, which restricted the subject matter jurisdiction of these qui tam actions in cases where the suit is based on publicly disclosed information:
 
 
 25
 (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
 
 
 26
 (B) For purposes of this paragraph, "original source"means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.
 
 
 27
 31 U.S.C. 3730(e)(4). Under this regime, jurisdiction is lacking "whenever the relator files a complaint describing allegations or transactions substantially similar to those in the public domain, regardless of the actual source for the information in the particular complaint." Findley, 105 F.3d at 682; see also United States ex rel. Mistick PBT v. Housing Auth. of the City of Pittsburgh, 186 F.3d 376, 388 (3d Cir. 1999). Although a qui tam plaintiff may be able to present "allegations or transactions" with copious detail, we inquire only as to whether the publicly disclosed information " 'could have formed the basis for a governmental decision on prosecution, or could at least have alerted law-enforcement authorities to the likelihood of wrongdoing.' " United States ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 654 (D.C. Cir. 1994) (quoting United States ex rel. Joseph v. Cannon, 642 F.2d 1373, 1377 (D.C. Cir. 1981)). We have expressed this inquiry in a formula:
 
 
 28
 [I]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers orlisteners may infer Z, i.e., the conclusion that fraud has been committed .
 
 
 29
 Springfield Terminal, 14 F.3d at 654.
 
 
 30
 Once it is determined that "public disclosure" has occurred, the court considers whether the relator is an "original source." See id. at 651. Under 31 U.S.C. 3730(e)(4)(B), two elements must be shown. First, the relator must show "direct and independent knowledge of the information on which the publicly disclosed allegations are based"; such information must be firsthand and cannot depend on the public disclosures. See Findley, 105 F.3d at 690. Second, the relator must voluntarily disclose his information to the federal Government before filing his lawsuit. Such voluntary disclosure must occur prior to the public disclosures which invoke the jurisdictional bar. See id.
 
 III.
 A. Public Disclosure
 
 31
 Settlemire asserts that the District spent Expansion Act money for purposes other than those required by that Act. Regardless of what other purpose the funds were spent on, any purpose other than those required by the statute could constitute a false claim against the government. Here however, District officials disclosed in public Congressional hearings that they were using the funds for purposes beyond those listed in the Expansion Act. Of course, their willingness to disclose this information makes it appear that they thought nothing was improper. As Chief Fullwood said, the District believed the funds were "virtually unencumbered in the way that the Congress intended us to use it, as long as it was used specifically for law enforcement purposes." This disclosure that the District was using and planned to continue to use Expansion Act funds in ways outside the letter of the statute, "enable[d] the government to adequately investigate the case and to make a decision whether to prosecute," Findley, 105 F.3d at 688. It therefore publicly disclosed the alleged false claims as contemplated in 3730(e)(4)(A).
 
 
 32
 The fact that Settlemire is able to provide more specific details about what happened to the allegedly misspent funds does not matter. In Findley, we noted that a relator's ability to reveal specific instances of fraud where the general practice has already been publicly disclosed is insufficient to prevent operation of the jurisdictional bar. See Findley, 105 F.3d at 687-88. There is no requirement, as Settlemire appears to contend, that the relevant public disclosures irrefutably prove a case of fraud. It is sufficient that the "publicly disclosed transaction is sufficient to raise the inference of fraud." Id. at 687.
 
 
 33
 Nor is it of any concern that the District had not accessed all of the Expansion Act funds when the public disclosures where made. As we held in Findley, disclosures going back as far as forty years prior to the relator's lawsuit were sufficient to disclose the practices which formed the basis of the relator's suit. See id. at 685-87. Cases may arise where disclosures of a practice are insufficient to be considered public disclosures of later instances of fraud, as "Congress did not prescribe by mathematical formulae the quantum or centrality of nonpublic information that must be in the hands of the qui tam relator in order for suits to proceed." Springfield Terminal, 14 F.3d at 653. But, as here, where we have before us publicly disclosed information showing how this same defendant intended to spend monies appropriated under this same statute, it is clear that public disclosure under 3730(e)(4)(A) has occurred.[2]
 
 B. Original Source
 
 34
 Although the District's practices were publicly disclosed, that does not end our endeavor. Settlemire's action may nonetheless proceed if he can demonstrate that he is an "original source" of the information as defined by 31 U.S.C. 3730(e)(4)(B). That is, he must show that he met the "direct and independent knowledge" requirement and voluntarily disclosed his information to the Government prior to the public disclosures and the filing of his lawsuit. He has not made such a showing.
 
 
 35
 While the District's Rule 12(b)(1) motion properly raised the original source issue, Settlemire dwelled only on the independent knowledge element and presented no evidence of voluntary disclosure. Only in his reply brief before this court did Settlemire finally address the voluntary disclosure issue, relying on his supplemental declaration dated five days prior to the filing of the reply brief. In the absence of extraordinary circumstances, Settlemire's failure to assert sufficient jurisdictional facts in a timely fashion means that he cannot satisfy the requirements of 31 U.S.C. 3730(e)(4)(B). See District of Columbia v. Air Florida, Inc., 750 F.2d 1077, 1084 (D.C. Cir. 1984) (court need not consider issues not presented to the district court); United States v. Whren, 111 F.3d 956, 958 (D.C. Cir. 1997) (court need not consider issues that appellant fails to raise in opening appeal brief although issue was raised below), cert. denied, 118 S. Ct. 1059 (1998); National Anti-Hunger Coalition v. Executive Comm. of the President's Private Sector Survey on Cost Control, 711 F.2d 1071, 1075 (D.C. Cir. 1983) (appellate court will generally not consider new evidence on appeal).
 
 
 36
 It was completely proper for Settlemire to assert below that the jurisdictional bar did not apply because, in his view, the public disclosures did not fall under 31 U.S.C. 3730(e)(4)(A). Upon losing on this ground however, Settlemire does not have a right to recast his claim on appeal so as to avoid the consequences of that decision.
 
 
 37
 Settlemire moved to supplement the joint appendix at the same time he filed his reply brief in order to provide evidence supporting his voluntary disclosure argument. The District opposed the motion and also moved to strike the reply brief.We deferred consideration of these motions pending oral argument. As additional evidence not presented to the district court is not ordinarily considered on appeal, see National Anti-Hunger Coalition, 711 F.2d at 1075, we will deny Settlemire's motion to supplement. There is no need to strike the reply brief in its entirety, so we will also deny that motion. However, we note in passing that even if we were to consider Settlemire's additional materials, he still does not allege that he actually disclosed any information to the Government before the public disclosures occurred.
 
 
 38
 After our review of the record, we hold that Settlemire has not proved himself to be an "original source." The district court concluded that Settlemire did not have "direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. 3730(e)(4)(B). But as it is patently clear that Settlemire did not present evidence of voluntary disclosure, we affirm the district court's holding that Settlemire cannot qualify as an original source on those grounds alone. When the judgment of the court below is correct as a matter of law, we may affirm on different grounds. See, e.g., Haddon v. Walters, 43 F.3d 1488, 1491 (D.C. Cir. 1995).
 
 C. Supplemental Issue
 
 39
 Because of our lack of subject matter jurisdiction over this action, we do not proceed to the claim-for-relief question posed by the possible application to the District of Columbia of United States ex rel. Long v. SCS Business & Technical Inst., 173 F.3d 870 (D.C. Cir.) (holding that a state is not a "person" subject to suit under the FCA), supplemented by, 173 F.3d 890 (D.C. Cir.), petition for cert. filed, 68 U.S.L.W. 3116 (U.S. Aug. 2, 1999) (No. 99-213). We had ordered additional briefing sua sponte on the relevance of Long, but now have no occasion to address that issue and express no opinion on its merits. See Steel Co. v. Citizens for a Better Env't, 118 S. Ct. 1003, 1012-16 (1998); United States ex rel. Kreindler & Kreindler v. United Technologies Corp., 985 F.2d 1148, 1155-56 (2d Cir. 1993) (holding that court should consider 12(b)(1) jurisdictional challenges before 12(b)(6) challenges).[3]
 
 IV. Conclusion
 
 40
 For the reasons set forth above, we conclude that the allegations of Settlemire's complaint fall within the FCA's jurisdictional bar against actions based on publicly disclosed information. We further hold that Settlemire has not satisfied the original source exception to the jurisdictional bar. Accordingly, the district court's dismissal of this action is
 
 
 41
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The parties dispute whether funds were actually appropriated under the Expansion Act for fiscal years 1992 and 1993, but we need not resolve that issue. See infra n.2.
 
 
 [2]
 The parties spend a good deal of time in their briefs arguing over which years Congress actually appropriated funds under the Expansion Act. Settlemire claims that $93,220,000 was appropriated in total for fiscal years 1990 through 1993. The District asserts that no funds were provided in fiscal years 1992 and 1993. Neither dispute that funds were not appropriated in fiscal year 1994.Settlemire correctly points out that each count of fraud alleged in a qui tam action is considered separately under the jurisdictional bar provision. See United States ex rel. Alexander v. Dyncorp, Inc., 924 F. Supp. 292, 298-302 (D.D.C. 1996). However, because the public disclosures in this case were sufficient to disclose the District's general practices regarding Expansion Act funds for all of the years in question, it makes no difference whether funds were appropriated for only two or as many as four years. This being the case, we need not decide the issue.
 
 
 [3]
 We are aware that the Supreme Court recently expanded the scope of its review in Vermont Agency of Natural Resources v. United States ex rel Stevens, 120 S. Ct. 523 (1999), another FCA qui tam case, to consider whether "a private person [has] standing under Article III to litigate claims of fraud upon the government."As we have already disposed of this case on other jurisdictional grounds, we do not address the issue.