UNITED STATES of America,
EX REL. Stephen M.
SHEA, Plaintiff,

v.

VERIZON COMMUNICATIONS,
INC., et al., Defendants.

Civil Action No. 09–1050(GK)

United States District Court,
District of Columbia.

Signed October 6, 2015

Christopher Bowmar Mead, Lance Alan Robinson, Stuart A. Berman, London & Mead, Washington, DC, for plaintiff.

Seth Paul Waxman, Jonathan G. Cedarbaum, Wilmer Cutler Pickering Hale & Dorr LLP, Washington, DC, for Defendants.

## *MEMORANDUM OPINION*

Gladys Kessler, United States District Judge

Relator Stephen M. Shea ("Shea," "Plaintiff," or "Relator") brought this second *qui tam* action against Verizon Business Network Services, Inc., Verizon Federal Inc., MCI Communications, Inc. d/b/a Verizon Business Services and Cello Partnership d/b/a Verizon Wireless ("Defendants" or "Verizon") pursuant to the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* [Dkt. No. 1].

Now pending before the Court in this long saga are two motions: Verizon's Renewed Motion to Dismiss [Dkt. No. 79], filed July 31, 2015; and Shea's Motion to Require Production of Preliminary Discovery Previously Ordered Produced In Cam-

era, and to Postpone Briefing on Defendants' Renewed Motion to Dismiss for 60 Days After Production to Give Relator Time to Analyze the Preliminary Discovery and Confer with the Government [Dkt. No. 80], filed August 6, 2015. Plaintiff filed his Opposition to Verizon's Motion to Dismiss [Dkt. No. 83] on August 24, 2015, and Verizon filed its Reply [Dkt. No. 86] on September 8, 2015. Verizon filed its Opposition to Plaintiff's Motion to Require Production on August 24, 2015 [Dkt. No. 84] and Shea filed his Reply on August 25, 2015 [Dkt. No. 85]. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the following reasons, the Court concludes that Verizon's Motion to Dismiss shall be **granted** and Plaintiff's action shall be **dismissed without prejudice.** Plaintiff's Motion to Require Production and Postpone Briefing shall be **denied as moot.**

## I. BACKGROUND

### A. Procedural Background

Shea filed his first *qui tam* complaint against Verizon on January 17, 2007 ("Verizon I"), 07–cv–111 [Dkt. No. 1] ("2007 Complaint"). The 2007 Complaint alleged "the knowing submission to the United States of certain prohibited surcharges under contracts to provide telecommunications services between defendant Verizon Communications, Inc. (and its division Verizon Business) and the General Services Administration." 2007 Complaint ¶ 2. The United States intervened in the 2007 lawsuit, and in February 2011, the parties reached a settlement agreement in which Verizon paid the United States $93.5 million. The settlement agreement did not include any admission of liability and the case was dismissed on February 28, 2011. Verizon I, 07–cv–lll [Dkt. No. 41].

Plaintiff filed his current, second *qui tam* complaint against Verizon on June 5, 2009 ("Verizon II"), 09–cv–1050 [Dkt. No. 1] ("2009 Complaint"). On November 30, 2011, the United States informed the Court that it was "not intervening at [that] time" in the Verizon II, 2009 lawsuit. [Dkt. No. 26.] On July 26, 2012, Plaintiff filed his First Amended Complaint. [Dkt. No. 37.] On September 12, 2012, he filed his Second Amended Complaint ("SAC") [Dkt. No. 49], now on remand from the Court of Appeals [Dkt. No. 77], and the subject of Defendants' Renewed Motion to Dismiss, filed on July 31, 2015 [Dkt. No. 79].

On September 12, 2012, Defendants filed their Motion to Dismiss the Second Amended Complaint ("MTD"). [Dkt. No. 51.] On September 27, 2012, Shea filed his Opposition to Defendants' Motion to Dismiss the Second Amended Complaint ("Opposition"). [Dkt. No. 54.] On October 9, 2012, Defendants filed their Reply in Support of their Motion to Dismiss the Second Amended Complaint ("Reply"). [Dkt. No. 55]. And on October 25, 2012, the United States filed its Statement of Interest. [Dkt. No. 56].

On November 15, 2012, the Court granted Defendants' Motion to Dismiss for lack of jurisdiction as to Shea and granted the Motion without prejudice as to the United States. *U.S. ex rel. Shea v. Verizon Bus. Network Servs. Inc.,* 904 F.Supp.2d 28 (D.D.C.2012) *aff'd sub nom. U.S., ex rel. Shea v. Cellco P'ship,* 748 F.3d 338 (D.C.Cir.2014) *cert. granted, judgment vacated,* — U.S. ——, 135 S.Ct. 2376, 192 L.Ed.2d 162 (2015) and *vacated and remanded sub nom. U.S. ex rel. Shea v. Cellco P'ship,* 614 Fed.Appx. 519 (D.C.Cir. 2015).

On December 17, 2012, Shea took an appeal to the Court of Appeals seeking to overturn that decision [Dkt. No. 64]. Thereafter, on April 11, 2014, the Court of

Appeals issued a Judgment affirming dismissal of Shea's Complaint. *U.S., ex rel. Shea v. Cellco P'ship*, 748 F.3d 338 (D.C.Cir.2014) *cert. granted, judgment vacated,* —— U.S. ——, 135 S.Ct. 2376, 192 L.Ed.2d 162 (2015). On August 8, 2014, the Court of Appeals issued its Mandate. [Dkt. No. 72].

However, on June 1, 2015, the Supreme Court vacated the Court of Appeals' Judgment and remanded the case for further consideration in light of the Supreme Court's recent opinion in *Kellogg Brown & Root Servs., Inc. v. U.S., ex rel. Carter,* —— U.S. ——, 135 S.Ct. 1970, 191 L.Ed.2d 899 (2015). *U.S. ex rel. Shea v. Cellco P'ship,* —— U.S. ——, 135 S.Ct. 2376, 192 L.Ed.2d 162 (2015). On July 9, 2015, the Court of Appeals Ordered, on its own Motion, the recall of the Mandate issued on August 8, 2014, directing the Clerk of the District Court "to return the Mandate forthwith" [Dkt. No. 74]. Finally, on July 17, 2015, the Court of Appeals Ordered and Adjudged "that the judgment of the District Court be vacated and the case be remanded for further proceedings consistent with the Supreme Court's Opinion in *Kellogg Brown & Root Services v. United States ex rel. Carter,* —— U.S. ——, 135 S.Ct. 1970, 191 L.Ed.2d 899 (2015)" [Dkt. No. 77].

## B. Factual Background

Shea's SAC alleges that "[t]his lawsuit is based on a scheme by [ ] [Verizon] to defraud the United States by knowingly billing the government for non-allowable surcharges...." SAC ¶ 1. Plaintiff claims that his knowledge of the fraud is "[b]ased on his experience consulting with large commercial telecommunications customers" and that, as a consultant, he "learned that most telecommunication carriers, including WorldCom, later named MCI Communications Corp., acquired by Verizon in 2006 (collectively 'MCI/Verizon'), had a custom and practice of charging [Non–Allowable Tax–Like Charges]." SAC ¶ 3. The SAC also alleges that "MCI/Verizon overcharged the United States, just like its commercial customers." SAC ¶ 4.

The SAC also describes the source of Shea's insider knowledge: "In 2004, Shea received an MCI document indicating that the company was charging the government for regulatory fee surcharges, and various state taxes, including utility taxes, ad valorem/property taxes, and business, occupational, and franchise taxes." SAC ¶ 4. The Complaint further claims that "[a] former Verizon employee, who worked at the company for over 30 years and retired as a manager, senior staff consultant, confirmed that Verizon did not have a separate billing system for federal customers and commercial customers, and that Verizon's billing system did not have the capability to turn off the surcharges that were generally charged to all customers." SAC ¶ 27. The SAC then alleges that "[b]ased on Verizon's practice of improperly billing Non–Allowable Tax–Like Charges to commercial customers and the government, ... Verizon improperly billed for Non–Allowable Tax–Like Charges on the following telecommunication contracts: [listing 20 contracts between Defendants and the U.S. Government]." SAC ¶ 28.

In its original Motion to Dismiss, Defendants argued that Shea's SAC should be dismissed for lack of subject matter jurisdiction under the FCA's first-to-file bar. That bar provides "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). Verizon reasoned that "[b]ecause the present action [Verizon II] is 'related' to, and based on the facts underlying [ ] the 2007 lawsuit [Verizon I], it

could be brought only by the Government, not a private relator," such as Shea. Mot. to Dismiss at 20 [Dkt. No. 51].

Shea responded that the Second Amended Complaint was not barred by the first-to-file rule because he filed both the lawsuits in question, and, therefore, Verizon I, should only bar someone other than Shea from filing a related action. Shea also pointed out that Verizon I had been settled and therefore was not pending when the SAC was filed, and that Verizon I and Verizon II are not related actions because the SAC alleged that Verizon committed fraud on contracts and U.S. agencies that were not in issue in Verizon I.

This Court concluded that the first-to-file bar did apply to successive related actions brought by the same relator, that the Verizon I lawsuit was pending when Shea brought Verizon II, and that the Verizon II lawsuit was indeed related to Verizon I. Because the Court concluded that the first-to-file bar applied to the Verizon I and Verizon II actions, both of which it concluded were related, and because the Court then understood the first-to-file bar to be jurisdictional, Verizon's Motion to Dismiss was granted.

Thereafter, on December 12, 2012, the Plaintiff appealed to the Court of Appeals. On April 11, 2014, as noted earlier, the Court of Appeals affirmed this Court's dismissal of Verizon II. *Shea,* 748 F.3d 338.

### C. Recent Developments in the Law

On May 26, 2015, the Supreme Court issued an important decision dealing directly with a key issue in this case. That case is *Kellogg Brown & Root Services,* —— U.S. ——, 135 S.Ct. 1970, 191 L.Ed.2d 899, in which the Supreme Court held that "a *qui tam* suit under the FCA ceases to be 'pending' once it is dismissed." *Id.* at 1979. The Court also held that dismissal with prejudice was not called for if the

respondent's claims had to be dismissed under the first-to-file bar, which provides that "[w]hen a person brings an action . . . no person other than the Government may intervene or bring a related action based on the facts underlying the *pending* action." *Id.* at 1978 (emphasis in original) (quoting 31 U.S.C. § 3730(b)(5)).

On June 23, 2015, our Court of Appeals also issued an important decision dealing directly with another key issue in this case: *United States, ex rel. Heath v. AT & T, Inc.,* 791 F.3d 112 (D.C.Cir.2015). The Court of Appeals held that the FCA's first-to-file bar on *qui tam* lawsuits is not jurisdictional, and instead, "bears only on whether a *qui tam* plaintiff has properly stated a claim." *Heath,* 791 F.3d at 121.

In discussing the jurisdictional issue in *Heath,* the Court of Appeals recognized that it had previously "affirmed a district court's jurisdictional dismissal under Federal Rule of Civil Procedure 12(b)(1) of a complaint under the first-to-file bar, albeit without specifically addressing whether the bar is jurisdictional." *Id.* at 119 (citing *Shea,* 748 F.3d 338). The Court of Appeals was referring to this very case, which it had originally affirmed on April 11, 2014. *Shea,* 748 F.3d 338. However, as noted earlier, on July 9, 2015, the Court ordered, on its own Motion, "that the mandate issued on August 8, 2014, is hereby recalled" and directed the Clerk of the District Court to return the mandate "forthwith" [Dkt. No. 74]. On July 17, 2015, the Court "remanded for further proceedings consistent with the Supreme Court's opinion in *Kellogg Brown & Root v. United States ex rel. Carter*" [Dkt. No. 77].

### D. Where We are Now

Just two weeks after the Court of Appeals remanded this case, on July 31, 2015,

Defendants filed their Renewed Motion to Dismiss. Six days later, Shea filed his Motion to Require Production of Preliminary Discovery Previously Ordered Produced In Camera, and to Postpone Briefing on Defendants' Renewed Motion to Dismiss for 60 Days After Production to Give Relator Time to Analyze the Preliminary Discovery and Confer with the Government. On August 24, 2015, Plaintiff filed his Opposition to Verizon's Motion to Dismiss, and on September 8, 2015, Verizon filed its Reply. On August 24, 2015, Verizon filed its Opposition to Plaintiff's Motion to Require Production, and on August 25, 2015, Shea filed his Reply.

## II. STANDARD OF REVIEW

In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge [ ] [his or her] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,- 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563, 127 S.Ct. 1955.

Under the *Twombly* standard, a "court deciding a motion to dismiss must not make any judgment about the probability of the plaintiffs' success ... [,] must assume all the allegations in the complaint are true (even if doubtful in fact) ... [, and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.,* 525 F.3d 8, 17 (D.C.Cir.2008) (internal quotation marks and citations omitted). A complaint will not suffice, however, if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal,*

556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955) (alteration in *Iqbal* ).

■ Under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of showing by a preponderance of the evidence that the Court has subject matter jurisdiction. *Carney Hosp. Transitional Care Unit v. Leavitt,* 549 F.Supp.2d 93, 95 (D.D.C.2008) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). In deciding whether to grant a motion to dismiss for lack of jurisdiction, the Court must "accept all of the factual allegations in [the] [C]omplaint as true[.]" *Jerome Stevens Pharmaceuticals, Inc. v. Food & Drug Admin.,* 402 F.3d 1249, 1253–54 (D.C.Cir.2005) (citing *United States v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)) (internal quotation marks omitted). However, the Court may look beyond the Complaint's factual allegations to determine whether it has subject matter jurisdiction. *Id.*

## III. ANALYSIS

### A. Public Disclosure

The FCA prohibits private parties from bringing suits alleging fraud that has already been publicly disclosed in certain sources listed in the FCA statute, unless the relator is an "original source" of the disclosed information. 31 U.S.C. § 3730(e)(4). Defendants contend that all of the material elements of the fraud alleged in the SAC were publicly available before Plaintiff brought his claims. Plaintiff disagrees, arguing that his SAC is not based on publicly disclosed allegations or transactions.

#### 1. Recent Amendments Affecting the Public Disclosure Bar

■ The public disclosure bar "[s]eek[s] the golden mean between adequate incen-

tives for whistle-blowing insiders with genuinely **valuable information and discouragement of opportunistic** plaintiffs who have no significant information to contribute of their own[.]" *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn,* 14 F.3d 645, 649 (D.C.Cir.1994). In an attempt to approximate "the golden mean," Congress has amended § 3730(e)(4)'s language several times. *Id.* Most recently, Congress amended § 3730(e)(4) as part of the Patient Protection and Affordable Care Act ("ACA"), which became effective on March 23, 2010. Patient Protection and Affordable Care Act. Pub.L. No. 111–148, § 10104(j)(2), 124 Stat. 119, 901–902 (2010).[1] Plaintiff filed his initial Complaint on June 5, 2009, when the previous version of the disclosure bar was in force, but Plaintiff's SAC, filed on September 12, 2012, alleges violations of the FCA based on Defendant's post-March 23, 2010 conduct (*i.e.,* conduct occurring after the ACA's enactment).

Defendants claim that the statutory language in effect when Plaintiff filed his 2009 Complaint should govern all claims raised in this action. It is true that our Court of Appeals and the Supreme Court have indicated in footnotes that ACA's amendments to § 3730(e)(4) "do not apply to pending suits filed before their enactment." *U.S. ex rel. Oliver v. Philip Morris USA Inc.,*

763 F.3d 36, 39 n. 2 (D.C.Cir.2014); *accord Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson,* 559 U.S. 280, 283, 130 S.Ct. 1396, 176 L.Ed.2d 225 n.1 (2010). This conclusion rests on the fact that "[t]he legislation makes no mention of retroactivity, which would be necessary for its application to pending cases given that it eliminates petitioners' claimed defense to a *qui tam* suit." *Graham Cnty.,* 559 U.S. at 283, 130 S.Ct. 1396 n.1 (citing *Hughes Aircraft Co. v. U.S. ex rel. Schumer,* 520 U.S. 939, 948, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997)).

■ However, closer inspection of the Supreme Court's precedent on retroactivity reveals that the cited footnotes use the pendency of a case as shorthand for a more nuanced proposition: Statutes that are not retroactive do not apply to *conduct* occurring before their enactment. *Hughes Aircraft Co.,* 520 U.S. at 946, 117 S.Ct. 1871. The Supreme Court has counseled that "[t]he principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal[,]" *id.* and in *Landgraf v. USI Film Products,* 511 U.S. 244, 269–70, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Court held that to determine whether a statute acts retroactively, a "court must ask

---

1. Before ACA's enactment, § 3730(e)(4) read as follows:

   No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
   31 U.S.C. § 3730(e)(4) (2009). The ACA replaced that language with the following:

   (A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed-
   (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
   (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
   31 U.S.C. § 3730(e)(4) (2010).

whether the new provision attaches new legal consequences to events completed before its enactment."

Thus, it is the date of Defendants' allegedly fraudulent conduct—not the date when litigation is filed—that governs which law the Court must apply. *See United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 512–13 (D.C.Cir.2007) (applying pre–1986 public disclosure bar to claims arising before 1986, and applying 1986 amendments to claims arising after 1986); *see also United States ex rel. Lujan v. Hughes Aircraft Co.*, 162 F.3d 1027, 1031 (9th Cir.1998) ("We conclude that the crucial event for purposes of non-retroactivity is the alleged presentation by Hughes of a false claim, and not the public disclosure of that conduct.").

■ For these reasons, the Court concludes that the pre-amendment version of § 3730(e)(4)'s public disclosure bar applies to claims arising from Defendants' conduct before March 23, 2010, and the amended version of the public disclosure bar applies to conduct based on post-March 23, 2010 conduct.

■ Before the public disclosure bar was amended in the ACA, it was held to be jurisdictional. 31 U.S.C. 3730(e)(4)(A)(2009) (*"No court shall have jurisdiction* over an action under this section based upon the public disclosure of allegations or transactions" (emphasis added)); *Oliver*, 763 F.3d at 39. However, the ACA amendment omits such jurisdictional language. 31 U.S.C. 3730(e)(4)(A) (2010) (*"The court shall dismiss* an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" (emphasis added)). Thus, when the amended version of § 3730(e)(4)(A) applies, public disclosure does not deprive the Court of subject matter jurisdiction, but merely deprives the plaintiff of his claim. *Heath*, 791 F.3d at 120 ("[a]bsent [ ] a clear statement [from Congress] courts should treat [statutory] restriction[s] as nonjurisdictional in character" (internal quotation marks omitted)); *see also Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1249 (D.C.Cir.2004) ("[A statute's] lack of anything close to explicit jurisdictional language would render any exhaustion requirement non-jurisdictional.").

■ The change in public disclosure language from a jurisdictional to a non-jurisdictional bar is significant. "Truly jurisdictional rules govern a court's adjudicatory authority, obligating courts to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Heath*, 791 F.3d at 120 (internal quotation marks omitted). "Such objections may be raised at any point in the litigation, and a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety." *Id.* (internal quotation marks omitted).

■ Whether a rule is jurisdictional governs the facts that the Court may consider in determining whether a claim must be dismissed. Under Federal Rule of Civil Procedure 12(b)(1), the Court may even consider facts beyond the complaint to assure itself that it has subject matter jurisdiction. *See, e.g., Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C.Cir.2003) (noting that the Court could resolve factual questions in considering a motion to dismiss for lack of subject matter jurisdiction). Thus, for claims governed by the pre-ACA amended text of § 3730(e)(4)(A) (i.e., claims based on conduct before March 23, 2010), the Court may consider facts beyond the SAC to resolve the question of public disclosure.

■ However, for claims governed by the post-ACA amended text of § 3730(e)(4)(A), the Court must either limit itself to the pleadings or "treat [ ] [the motion] as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see also* Fed. R. Civ. P. 12(b)(6).

### 2. Public Disclosure of Transactions or Allegations

■ Under § 3730(e)(4)(A)—both pre- and post-ACA amendment—a claim is barred if the allegations or transactions forming the basis of the claim have been previously disclosed in any of the FCA's enumerated sources, which include, among other things, government reports and hearings, government audits, and the news media. *See id.* § 3730(e)(4)(A) (2009); id. § 3730(e)(4)(A) (2010); *see also United States ex rel. Davis v. District of Columbia*, 679 F.3d 832, 836 (D.C.Cir.2012). Defendants assert, and Plaintiff does not contest, that "websites that are available to the general public are 'news media' for purposes of the public disclosure bar." Defs.' Mot. at 19 (citing *United States ex rel. Green v. Serv. Contract Educ. & Training Tr. Fund*, 843 F.Supp.2d 20, 32–33 (D.D.C.2012)).

■ If a law suit is based upon public disclosures, the public disclosure bar "prevents suits by those other than an 'original source' when the government already has enough information to investigate the case and to make a decision whether to prosecute, or where the information could at least have alerted law–enforcement authorities to the likelihood of wrongdoing." *Davis*, 679 F.3d at 836 (internal quotation

marks omitted). Analogizing to simple algebra, our Court of Appeals has described the test for public disclosure as follows: "[I]f X + Y = Z, Z represents the *allegation* of fraud and X and Y represent its essential elements. In order to disclose the fraudulent *transaction* publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e.*, the conclusion that fraud has been committed." *Springfield Terminal Ry.*, 14 F.3d at 654 (emphasis in original).

■ Defendants argue that "[t]he claims in [Plaintiff's] Second Amended Complaint rest on two material elements: (1) that 20 contracts between Verizon and various government entities disallowed certain surcharges, and (2) that Verizon invoiced the government for these surcharges." Defs.' Mot. at 15 (citing SAC ¶ 28). Relying on documents publicly available on the internet and Shea's deposition testimony,[2] Defs.' Exs. 1–9 [Dkt. No. 79], Defendants contend that all of the necessary elements from which one could infer fraud (in our Court of Appeals' reasoning, both X and Y) have been publicly disclosed.

Plaintiff's allegations about the contracts at issue and the surcharges they prohibit mirror publicly available information. The names and numbers of the contracts Relator identifies have been posted on publicly accessible websites. Defs.' Ex. 3 (online Verizon Federal Contract User Guide)(identifying by name and number the contracts named in SAC ¶¶ 28(a), 28(b), 28(c), 28(f), 28(h), 28(i), 28(j), 28(k),

**2.** As discussed *supra* at 15–16, neither of these sources may be considered when the ACA-amended version of the public disclosure bar applies because that bar is non-jurisdictional. As explained below, the Court concludes that Defendants' public disclosure argument fails even with the support materials beyond the

Complaint. Defendants' challenge to claims governed by the amended statute would surely fail because that challenge must proceed without reference to materials beyond the SAC. Thus, the Court need not consider separately the claims governed by the amended statute.

25(1), & 28(m)); *id.* ¶ 7 & Defs. Ex. 6 (Department of Defense website) (identifying by name and number the contract named in 11 28(e)); *id.* ¶ 8 & Defs.' Ex. 7 (FedBixOpps.com website) (identifying by name and number the contract named in ¶ 28(g)); *id.* ¶ 9 & Defs.' Ex. 8 (online Verizon GSA Schedule Program) (identifying by name and number the contract named in ¶ 28(d)).

Plaintiff's SAC makes specific allegations regarding the contents of certain contracts. That information too, is available on-line. Defs.' Ex. 1, Shea Deposition ("Shea Dep.") 113:1–3 (regarding FEMA contract identified in Compl. ¶ 29); 116:7–9 (same); 113:22–114:4 (same); 120:6–7 (regarding language in WITS 3 Contract identified in Compl. ¶ 30); 127:12–13 (regarding modifications to Verizon Wireless Federal Supply Schedule Contract identified in Compl. 32–40); 137:9–10 (same); 142:4–16 (same).

Finally, Plaintiff relies on several passages from Federal Acquisition Regulations to show that what he calls "Non–Allowable Tax–Like Charges" may not be billed to the Government. *See* SAC at ¶¶ 16–26. These regulations, of course, are publicly available. Thus, the first material element of Plaintiff's fraud claim (or "X") has quite clearly been publicly disclosed.

However, the second material element ("Y"), that Verizon actually invoiced the Government for Non–Allowable Tax–Like Charges, had not been publicly disclosed when Plaintiff filed his Complaint. Defendants attempt to show that Plaintiff's allegation is based on publicly disclosed materials by pointing to Shea's deposition

testimony. In his deposition, Shea described finding "mock-up" or "training" Verizon invoices on the internet. *E.g.,* Shea Dep. 46:11–16; 47:22–48:1; 48:10. According to Shea, these were not the "actual billing[s]" but did include the "billing format" for certain Government contracts, *id.* at 47:14–16, and a "section on taxes and surcharges," *id.* at 47:22–48:1. Shea stated that the mock-ups "provide[d] [him] with enough information to know what surcharges are charged [on the relevant contract.]" *Id.* at 55:20–56:6.[3]

Our Court of Appeals has made clear that "[t]here is no requirement ... that the relevant public disclosures irrefutably prove a case of fraud." *U.S. ex rel. Settlemire v. District of Columbia,* 198 F.3d 913, 919 (D.C.Cir.1999) (internal quotation marks and citations omitted). "It is sufficient that the publicly disclosed transaction is sufficient to raise the inference of fraud." *Id.* (internal quotation marks omitted).

However, the mock-up invoices do not meet this standard. One cannot infer that Defendants actually submitted unlawful charges to the Government simply because mock-up invoices available on the internet include a "section on taxes and surcharges[.]" *Id.* at 47:22–48:1. Put differently, a complaint that alleged (X) that Government contracts prohibited certain charges and (Y) that mock-up invoices available on-line contained a field for those prohibited charges would fail to state a claim (Z) that the contractor actually billed the Government for the type of charges prohibited in the contracts and reflected on the mock-up invoices.

---

**3.** Defendants also make much of portions of Shea's deposition testimony that appear to weaken the strength of his allegations that Verizon committed fraud, *see* Defs.' Mot. at 21 and Defs.' Reply at 6–7, but those arguments are beyond the scope of what the Court may consider. Section 3730(e)(4)(A) requires the Court to consider only whether Shea's suit is based on publicly disclosed allegations or transactions.

Defendants point out that Shea believed that he knew what Verizon was actually charging the United States Government by looking at the mock-up invoices. However, Shea reached his conclusion because he already had (non-public) reasons to believe Verizon was defrauding the Government. As a key section of Plaintiff's Complaint sets forth:

Shea, through his extensive consulting experience, learned that Verizon had a custom and practice of charging its commercial customers Non–Allowable Tax–Like Charges. Upon investigation, Shea learned that Verizon also charged the United States these same Non–Allowable Tax–Like Charges. A former Verizon employee, who worked at the company for over 30 years and retired as a manager, senior staff consultant, confirmed that Verizon did not have a separate billing system for federal customers and commercial customers, and that Verizon's billing system did not have the capability to turn off the surcharges that were generally charged to all customers.

Pl.'s Compl. at ¶ 27; *see also id.* at ¶ 4. Without these allegations, the mock-up invoices alone would probably not give rise to an inference that the Government was actually billed.

Shea's deposition testimony does indicate that he took the existence of "taxes and surcharges" sections on the mock-up invoices to be evidence of Verizon's fraud. However, the test our Court of Appeals has established does not ask whether supporting evidence might exist in the public domain. Instead, the Court must decide whether the essential elements of the fraud have been disclosed. Shea has alleged that Verizon actually submitted invoices charging unlawful fees to the Government—the mock-ups are not enough to supplant this allegation in paragraph 27 of the SAC.

Defendants also argue that Shea has failed to allege any nonpublic elements of fraud, and instead, has merely applied his "expertise" to public information. *See Springfield Terminal Ry.*, 14 F.3d at 655 ("[T]here may be situations in which all of the critical elements of fraud have been publicly disclosed, but in a form not readily accessible to most people, *i.e.*, engineering blueprints on file with a public agency. Expertise in the field of engineering would not in itself give a *qui tam* plaintiff the basis for suit when all the material elements of fraud are publicly available, though not readily comprehensible to non-experts."). However, Shea has not simply relied on his alleged expertise. As discussed above, Plaintiff's allegations are derived from nonpublic information learned, *inter alia*, in the course of his consulting for Verizon's commercial clients and private conversations with a former Verizon employee.

Finally, in a footnote, Defendants argue that the complaint Shea filed in Verizon I was itself a public disclosure. However, the Verizon I complaint remained under seal until 2011, long after Plaintiff filed his initial Complaint (*i.e.*, the 2009 Complaint) in this case. Our Court of Appeals has held that disclosure to the Government alone is not public disclosure, and therefore while a complaint is under seal, the disclosure is not public. *See Oliver*, 763 F.3d at 42.

Defendants also contend that Verizon I's 2007 Complaint does, in fact, qualify as a public disclosure with respect to claims added to Plaintiff's SAC in this case after the 2007 Complaint had been unsealed. Defendants fail to specify the connection between the contents of the 2007 Complaint and the allegations added to Plaintiff's SAC in this case. Verizon appears to argue that any allegations added after the 2007 Complaint was unsealed are barred,

but that does not logically follow. Even under Defendants' view of the public disclosure bar, they would have to show that the elements of the new fraud allegations added to Plaintiff's SAC were already disclosed in the 2007 Complaint. Defendants have not even attempted to make such a showing.

Moreover, Defendant's position runs counter to the purpose of the public disclosure bar. The public disclosure bar is designed to "discourage[ ][ ] opportunistic plaintiffs who have no significant information to contribute of their own[.]" *Springfield Terminal Ry.*, 14 F.3d at 649. The allegations in the 2007 Complaint came from Shea himself. He could not possibly have "opportunistically" relied on the unsealing of the 2007 Complaint in order to add claims to Verizon II—Shea is the source of both.

For all of these reasons, the Court finds that § 3730(e)(4)(A) does not bar Plaintiff's suit.[4]

### B. First–to–File Bar

▌ The FCA's "first-to-file" bar provides that "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). This Court's previous Memorandum Opinion held that Plaintiff's action in Verizon II was "a related action based on the facts underlying" Verizon I, that Verizon I was "pending" when Plaintiff filed his initial 2009 Complaint in Verizon II, and that § 3730(b)(5)'s bar was jurisdictional. *Shea*, 904 F.Supp.2d at 35–37. Thus, the Court granted Defendant's Motion to Dismiss for lack of jurisdiction. *Id.*

As explained earlier, that Memorandum Opinion was vacated by our Court of Appeals, *Shea*, 614 Fed.Appx. 519, in the wake of the Supreme Court's opinion in *Kellogg Brown & Root Services,* holding that a *qui tam* suit ceases to be "pending" under § 3730(b)(5) once the suit has been dismissed, 135 S.Ct. at 1979. Additionally, one of our Court of Appeals' recent opinions has vacated this Court's previous holding that the first-to-file bar is jurisdictional. In *Heath,* the Court of Appeals made clear that "[b]ecause nothing in the text or structure of the first-to-file rule suggests, let alone clearly states, that the bar is jurisdictional, ... the first-to-file rule bears only on whether a *qui tam* plaintiff has properly stated a claim." 791 F.3d at 121 (internal quotation marks and citation omitted).

Despite these recent changes in the law, Plaintiff seems to argue that while Verizon I and Verizon II are related actions, Verizon II should not be dismissed because Verizon I was no longer pending when he filed his SAC in Verizon II. Defendants contend that because Plaintiff brought the Verizon II action (by filing his 2009 Complaint) while Verizon I was still pending, the Court must dismiss Plaintiff's action now in order to comply with the language of § 3730(b)(5).

Accordingly, the question before the Court is this: Although no related action is currently pending, must the Court nonetheless dismiss Plaintiff's action because a related action was pending when he filed his initial 2009 Complaint? The Court concludes that the answer is yes.

Although several aspects of the first-to-file bar have recently been clarified by the Supreme Court and our Court of Appeals,

---

**4.** Because the Court concludes that the essential elements of Shea's fraud allegations were not publicly disclosed, it need not consider whether Shea was an "original source" under § 3730(e)(4)(A).

its essence remains well-defined: Plaintiffs, other than the Government, may not file FCA actions while a related action is pending. 31 U.S.C. § 3730(b)(5) As the Court of Appeals for the Seventh Circuit has explained, "[s]tatutes of this form are understood to forbid the commencement of a suit; an action (or a given claim within a larger action) brought while the condition precedent is unsatisfied must be dismissed rather than left on ice." *U.S. ex rel. Chovanec v. Apria Healthcare Grp. Inc.*, 606 F.3d 361, 362 (7th Cir.2010) (internal quotation marks omitted).

Plaintiff contends that the Court should ask not whether a related action was pending when he filed his *initial* Verizon II Complaint in 2009, but rather, whether a related action was pending when he filed his *most recent* amended Complaint (his Second Amended Complaint) in 2012. In its now-vacated Memorandum Opinion dismissing Plaintiff's SAC, this Court based its conclusion that "the relevant inquiry turns on when a successive action is commenced, not when a complaint is amended[,]" on the first-to-file bar's jurisdictional nature. *Shea*, 904 F.Supp.2d at 35 (reasoning that "the jurisdiction of the court depends upon the state of things at the time of the action brought"). Plaintiff points to the recent ruling of our Court of Appeals holding that the first-to-file bar is non-jurisdictional. *Heath*, 791 F.3d at 121 ("the first-to-file rule bears only on whether a *qui tam* plaintiff has properly stated a claim."). Thus, Plaintiff contends that the relevant inquiry too has changed.

Although it is now clear that the first-to-file bar is not jurisdictional, the language of § 3730(b)(5) itself, nevertheless, requires the Court to look to the moment when Plaintiff filed his initial Complaint in Verizon II. Once an FCA action is pending, the first-to-file bar provides that "no person ... may. bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). What offends the first-to-file bar is the bringing of the action (*i.e.*, filing an initial complaint), not the failing to amend a complaint or litigating the case.

Other district courts have reached the same conclusion that even if a first-filed related action is no longer pending, a second-filed action must be dismissed if the first "*was pending* at the time that [the second-filer] filed her claim." *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 2000 WL 33775399, at *3 (C.D.Cal. Jan. 20, 2000) (emphasis added) *aff'd*, 243 F.3d 1181 (9th Cir.2001); *U.S. ex rel. Harris v. Dialysis Corp. of Am.*, 2013 WL 5505400, at *5 n. 8 (D.Md. Oct. 1, 2013) ("The first-to-file bar does not stop a relator from filing a related case once the first case is no longer pending. Because the [related] case was dismissed on May 30, 2013, Relators conceivably could *refile* their [ ] claim." (emphasis added) (internal citation omitted)).

In this case, Plaintiff brought the Verizon II action—by filing his 2009 Complaint—while Verizon I was still pending and thus, contravened § 3730(b)(5)'s command. Plaintiff responds that this violation of the first-to-file bar was cured when he submitted an amended Complaint pursuant to Federal Rule of Civil Procedure 15. Plaintiff notes that under Rule 15 leave to amend should be granted liberally, and that "it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, or futility of amendment." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C.Cir. 1996) (internal quotation marks and alterations omitted).

None of Plaintiff's arguments, however, explain precisely how merely amending the Complaint could remedy his

violation of the first-to-file bar. The first-to-file bar prohibits bringing a "related *action,*" not a related *complaint.* 31 U.S.C. § 3730(b)(5) (emphasis added). In *Ciralsky v. CIA,* 355 F.3d 661, 666 (D.C.Cir.2004), our Court of Appeals clarified the distinction between a complaint, which may be amended or dismissed without prejudice without terminating the case, and an action, which is the case itself. The Court stated the following:

> [C]ourts often regard the dismissal without prejudice of a *complaint* as not final, and thus not appealable under 28 U.S.C. § 1291, because the plaintiff is free to amend his pleading and continue the litigation. The dismissal without prejudice of an *action* (or "case"), by contrast, is a different matter.... [Dismissal without prejudice of an action is appealable because] denial of relief and dismissal of the case end[s] th[e] suit as far as the District Court [i]s concerned.

*Id.* (emphasis in original) (internal citations and quotation marks omitted). Put differently, a complaint begins an action, but amendment or dismissal without prejudice of that complaint does not end the action. As long as the complaint may be amended, the action itself continues. Plaintiff fails to recognize this key distinction.

No matter how many times Plaintiff amends his Complaint, it will still be true that he "br[ought] a related action based on the facts underlying the [*t* hen] *pending* action." 31 U.S.C. § 3730(b)(5) (emphasis added). The only way to cure this particular defect is for the Court to dismiss Plaintiff's action—not merely his Complaint—so that he may file a new action now that Verizon I is no longer pending.

The Supreme Court has warned that "[t]he False Claims Act's *qui tam* provisions present many interpretive challenges, and it is beyond [its] ability in this case to make them operate together smoothly like a finely tuned machine." *Kellogg Brown & Root Services,* 13 5 S.Ct. at 1979. The Supreme Court's words are equally appropriate for this Court. Compliance with § 3730(b)(5) requires dismissal of Plaintiff's action without prejudice so that he may refile now that Verizon I is no longer pending.

### C. Rule 9(b)

▮ Defendants' final contention is that Plaintiff's SAC must be dismissed for failure to meet the pleading standards of Federal Rules of Civil Procedure 8 and 9(b). The Court has already concluded that Plaintiff's action must be dismissed without prejudice under § 3730(b)(5). Thus, dismissal of Plaintiff's SAC without prejudice under Rules 8 and 9(b) would have no additional effect. Accordingly, the only question the Court must consider is whether dismissal *with prejudice* under Rules 8 and 9(b) is warranted. The Court concludes that it is not.

Federal Rule of Civil Procedure 8(a) provides the familiar requirement that "[a] pleading that states a claim for relief must contain: ... a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8. Rule 9(b) sets forth a heightened pleading standard for allegations of fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

▮ "Combining Rules 8 and 9(b), [courts] require that the pleader state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *U.S. ex rel. Williams v. Martin–Baker* Aircraft Co.,

389 F.3d 1251, 1256 (D.C.Cir.2004) (internal quotation marks, citations, and ellipses omitted). Plaintiffs must also "identify individuals allegedly involved in the fraud[,]" *id.* although in the case of corporate fraud, the individual identified may be the corporation itself, *Heath,* 791 F.3d at 125.

Defendants claim that Plaintiff's SAC fails to meet this standard. They argue that Plaintiff's allegations fail to show that the contracts at issue prohibited the Tax–Like charges Plaintiff cites, that Plaintiff's allegations do not show that any improper billings actually occurred, that Plaintiff fails to identify when the false claims were made, and that Plaintiff does not adequately identify who made the false claims. Accordingly, Defendants contend that Plaintiff's SAC must be dismissed with prejudice.

▮▮▮▮ Ordinarily, a plaintiff may overcome the failure to satisfy pleading standards by amending her complaint. *Firestone,* 76 F.3d at 1209. "Failure to plead fraud with particularity [ ] does not support a dismissal with prejudice. To the contrary, leave to amend is almost always allowed to cure deficiencies in pleading fraud." *Id.* (internal quotation marks omitted). "A dismissal *with prejudice* is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Id.* (emphasis in original) (internal citations and quotation marks omitted). Defendants do not show that this condition has been met.

Defendants cite portions of Shea's deposition testimony to indicate that he lacks sufficient information to adequately allege his claims, and thus, conclude that Plaintiff would be unable to amend his Complaint such that it would comply with Rule 9(b). *See, e.g.,* Shea Dep. 117:1–3 ("I have not read every single one of these contracts in their entirety because I don't have them."). However, even if the Court were inclined to read into Shea's testimony all that Defendants do, the Court may not consider facts beyond the Complaint in a 12(b)(6) motion.

Defendants also point to Plaintiff's renewed request for preliminary discovery to suggest that Plaintiff must not be able to articulate sufficient allegations based on facts known by or available to him. However, the fact that Plaintiff has requested discovery does not demonstrate that, in the event Plaintiff's SAC was insufficient, he would be unable to cure the deficiency with additional consistent allegations. It is entirely possible that three years after filing his SAC, Shea will be able to add additional consistent allegations if and when he re-files his action. Because Shea could cure any deficiency in the SAC's factual allegations with additional consistent allegations, dismissal with prejudice is inappropriate.

For these reasons, the Court concludes that dismissal with prejudice is not warranted.

### D. Plaintiff's Motion for Preliminary Discovery and to Postpone Briefing

Because Plaintiff's case is being dismissed in its entirety, Plaintiff's Motion to Require Production of Preliminary Discovery and to Postpone Briefing is moot and therefore, shall be **denied.**

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is hereby **granted,** Plaintiff's action shall be **dismissed without prejudice,** and Plaintiff's Motion to Require Production of Preliminary Discovery and to Postpone Briefing shall be **de-**

nied as moot. An Order shall accompany this Memorandum Opinion.